# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 1, 2000 Session

## JOE BURTON v. WARREN FARMERS COOPERATIVE

**Appeal from the Circuit Court for Warren County**
**No. 8674      Charles D. Haston, Judge**

---

### No. M1999-00486-COA-R3-CV - Filed September 12, 2002

---

This appeal involves a dispute between a farmer and a co-op over a disappointing soybean crop. The farmer filed suit against the co-op in the Circuit Court for Warren County, alleging that his crop had been damaged by the manner in which the co-op had sprayed herbicide on his fields early in the growing season. At the close of the farmer's proof, the trial court granted the co-op's motion for involuntary dismissal under Tenn. R. Civ. P. 41.02(2) after concluding that he had failed to prove his breach of contract and negligence claims. The farmer asserts on this appeal that the trial court erred by dismissing his lawsuit. We have determined that the trial court properly dismissed the farmer's complaint at the close of his proof.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Chantal M. Eldridge, Cookeville, Tennessee, for the appellant, Joe Burton.

Steven A. Dix, Murfreesboro, Tennessee, for the appellee, Warren Farmers Cooperative.

## OPINION

## I.

Joe Burton lives in the Mount Zion community in Warren County and has farmed there for most of his life. In addition to his 272-acre home place where he raises Holstein cattle and grows row crops, he grows corn, soybeans, wheat, and tobacco in three rented tracts of land. One tract is a 27-acre field, and the other two tracts, consisting of 11 acres and 58 acres, form one large field. During the summer of 1995, Mr. Burton planted and harvested a wheat crop and then planted soybeans with the assistance of David Walker, the owner of a nearby farm. During June and July, Mr. Walker purchased and planted soybeans on his farm, in Mr. Burton's three fields, and on another nearby farm owned by Carl Bouldin. He planted the same variety of soybeans on all three farms.

In the meantime, Mr. Burton had made arrangements with the Warren Farmers Cooperative to spray herbicide on his fields to control weeds and grass. He left it to the co-op to select which herbicides to use. On June 20, 1995, Mike Young, a certified sprayer employed by the co-op,

sprayed Mr. Burton's 11-acre field with Roundup, Dual, and Canopy. On July 7, 1995, he sprayed Mr. Burton's 27-acre field with Fusilade 2000 and Classic. Finally, on July 17, 1995, Mr. Young sprayed Mr. Burton's 58-acre field with Fusilade DX and Classic.

Approximately seven to ten days after Mr. Young sprayed the last field, Mr. Burton noticed that his soybeans looked as if someone had "poured hot water on them." While the plants in the point rows[1] where Mr. Young had not sprayed appeared to be doing well, many of Mr. Burton's other soybean plants had stopped growing and appeared to be dying. Even though Mr. Burton's soybeans were struggling, the soybeans in Mr. Walker's and Mr. Bouldin's fields, which the co-op had not sprayed, were thriving.

Mr. Burton took several steps to address the problem with his soybean crop. First, he contacted the co-op. The co-op offered to spray his fields again, but Mr. Burton declined this offer because his soybeans were already blooming and could not be sprayed again. Accordingly, the co-op credited Mr. Burton's account for what it had charged to spray his soybeans. Zenica, the manufacturer of herbicides that had been sprayed on two of Mr. Burton's fields also reimbursed him for the cost of its chemicals after Mr. Burton executed a written release. Mr. Burton also filed a claim seeking disaster credit with the United States Department of Agriculture stating that his crops had been damaged by dry weather between July 10 and 14, 1995 and possibly by chemicals. The department denied his claim because it determined that his crops would yield more than ten bushels of soybeans per acre.

Eventually, Mr. Burton's neighbors' fields yielded good soybean crops. Mr. Burton ended up with a below normal crop. He testified that his normal yield was thirty bushels per acre and that he was only able to harvest approximately twelve bushels per acre on his 11-acre and 58-acre fields. Mr. Burton stated that he only harvested fifty-six bushels on his 27-acre field and that he eventually cut up the remaining crop for hay.

Mr. Burton finally filed suit against the co-op in the Circuit Court for Warren County, alleging seven causes of action including breach of contract, breach of express and implied warranty, negligence, and fraud. The co-op denied liability and moved for a summary judgment based on the release Mr. Burton had given to Zenica. The trial court denied the motion, and the case proceeded to trial. By the time of the trial, Mr. Burton had narrowed his claims to two – breach of contract and negligence. In addition to his own testimony, Mr. Burton's proof included the testimony of two other Warren County farmers, an educator with the University of Tennessee's Agricultural Extension Service, the owner of an agricultural spraying business, and Mr. Young, the co-op employee who had sprayed Mr. Burton's fields. Following the conclusion of Mr. Burton's case, the trial court granted the co-op's motion for an involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2). Mr. Burton has perfected this appeal.

---

[1]A point row refers to an irregular end of a field that is not perfectly straight. These areas are frequently not sprayed because the sprayer is turned off to avoid double spraying when it turns around at the end of a field.

## II.
### THE STANDARD OF REVIEW

At the outset, we must address the appropriate standard for reviewing the trial court's dismissal of Mr. Burton's claims against the co-op. Unfortunately, Mr. Burton has misapprehended the appropriate standard of review because he has overlooked the substantive differences between an order granting a directed verdict in a jury case and an order granting an involuntary dismissal in a non-jury case. The differences between the standards used to review these two orders will prove to be outcome-determinative in this case.

A Tenn. R. Civ. P. 41.02(2) motion for involuntary dismissal differs markedly from a Tenn. R. Civ. P. 50 motion for a directed verdict. The most obvious, yet most overlooked, difference is that motions for directed verdicts have no place in bench trials, while Tenn. R. Civ. P. 41.02(2) motions have no place in jury trials. *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 135 n.1 (Tenn. 2001); *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985). Beyond this obvious procedural difference, motions for involuntary dismissal serve a different purpose than motions for directed verdict and require the courts to employ a substantially different method of analysis.

A Tenn. R. Civ. P. 50 motion for directed verdict provides a vehicle for deciding questions of law. The question presented is whether the plaintiff has presented sufficient evidence to create an issue of fact for the jury to decide. *Spann v. Abraham*, 36 S.W.3d 452, 462 (Tenn. Ct. App. 1999); *Ingram v. Earthman*, 993 S.W.2d 611, 626 (Tenn. Ct. App. 1998). The courts do not weigh the evidence when they answer this question, *Conatser v. Clarksville Coca-Cola Bottling Co.*, 920 S.W.2d 646, 647 (Tenn. 1995), nor do they evaluate the credibility of the witnesses. *Richardson v. Miller*, 44 S.W.3d 1, 30 (Tenn. Ct. App. 2000). Rather, they review the evidence in the light most favorable to the non-moving party, give the non-moving party the benefit of all reasonable inferences, and disregard all the evidence contrary to the non-moving party's position. *Alexander v. Armentrout*, 24 S.W.3d 267, 271 (Tenn. 2000); *Addaman v. Lanford*, 46 S.W.3d 199, 203 (Tenn. Ct. App. 2000).

A directed verdict should not be granted if the party with the burden of proof has presented sufficient evidence to create an issue of fact for the jury to decide. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 231 (Tenn. Ct. App. 1999). A jury issue has been created if there is any doubt regarding the conclusions to be drawn from the evidence, *Crosslin v. Alsup*, 594 S.W.2d 379, 380 (Tenn. 1980), or if reasonable persons could draw different conclusions from the evidence. *Hurley v. Tennessee Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 891 (Tenn. Ct. App. 1995); *Pettus v. Hurst*, 882 S.W.2d 783, 788 (Tenn. Ct. App. 1993). A jury issue has not been created when reasonable minds can draw only one conclusion from the evidence. *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn. 1994); *Tompkins v. Annie's Nannies, Inc.*, 59 S.W.3d 669, 673 (Tenn. Ct. App. 2000).

Motions for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2) require the courts to engage in an entirely different analysis. These motions do not raise questions of law but rather challenge the sufficiency of the plaintiff's proof. *Smith v. Inman Realty Co.*, 846 S.W.2d 819, 821 (Tenn. Ct. App. 1992); *Merriman v. Smith*, 599 S.W.2d 548, 560 (Tenn. Ct. App. 1979). A claim may be dismissed pursuant to a Tenn. R. Civ. P. 41.02(2) motion to dismiss if, based on the law and

the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking. *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d at 740. Motions under Tenn. R. Civ. P. 41.02(2) require less certainty than motions for directed verdict. *Smith v. Inman Realty Co.*, 846 S.W.2d at 822. Thus, a court faced with a Tenn. R. Civ. P. 41.02(2) motion need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence. *Thompson v. Adcox*, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001).

This court uses the familiar Tenn. R. App. P. 13(d) standard to review a trial court's disposition of a Tenn. R. Civ. P. 41.02(2) motion because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence. *College Grove Water Util. Dist. v. Bellenfant*, 670 S.W.2d 229, 231 (Tenn. Ct. App. 1984); *Nold v. Selmer Bank & Trust Co.*, 558 S.W.2d 442, 444 (Tenn. Ct. App. 1977). Thus, we must review the record on appeal de novo with a presumption that the trial court's findings are correct. We will affirm the trial court's decision unless the evidence preponderates against the trial court's factual determinations or unless the trial court has committed an error of law affecting the outcome of the case. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Smith v. Inman Realty Co.*, 846 S.W.2d at 821. We give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses. *Thompson v. Adcox*, 63 S.W.3d at 787.

### III.
### MR. BURTON'S BREACH OF CONTRACT CLAIM

Mr. Burton asserts that the trial court should not have granted a directed verdict dismissing his breach of contract claim because the record contained sufficient direct and circumstantial evidence to establish a prima facie case that the co-op breached its contract to rid his fields of weeds and grass. This argument has two flaws. First, the trial court did not grant a directed verdict but rather dismissed Mr. Burton's contract claim in accordance with Tenn. R. Civ. P. 41.02(2). Second, Mr. Burton did not prove that he contracted with the co-op to rid his fields of weeds and grass.

Unless required by law, contracts need not be in writing to be enforceable. *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn. Ct. App. 1989). While oral contracts are enforceable, persons seeking to enforce them must demonstrate (1) that the parties mutually assented to the terms of the contract and (2) that these terms are sufficiently definite to be enforceable. *Davidson v. Holtzman*, 47 S.W.3d 445, 453 (Tenn. Ct. App. 2000); *Castelli v. Lien*, 910 S.W.2d 420, 426-27 (Tenn. Ct. App. 1995). The mutual assent need not be manifested in writing. It may be manifested, in whole or in part, by the parties' spoken words or by their actions or inactions. *Cole-McIntyre-Norfleet Co. v. Holloway*, 141 Tenn. 679, 685, 214 S.W. 817, 818 (1919); Restatement (Second) of Contracts § 19(1) (1979). It should not, however, be inferred from the unilateral acts of one party or by an ambiguous course of dealing between the parties from which different inferences regarding the terms of the contract may be drawn. *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App. 1990). Mutual assent also may not rest solely on the uncommunicated intentions or states of mind of the contracting parties. *Simonton v. Huff*, 60 S.W.3d 820, 826 (Tenn. Ct. App. 2000); *Bill Walker & Assocs., Inc. v. Parrish*, 770 S.W.2d at 770.

The fate of Mr. Burton's contract claim depends on the evidence regarding the scope of the work he contracted with the co-op to perform. There is no dispute that the parties entered into an oral contract requiring the co-op to select, supply, mix, and apply herbicides to Mr. Burton's fields. There is likewise no dispute that the co-op performed these services. However, Mr. Burton now insists that there was more to the contract and that the co-op had also agreed "to rid his fields of weeds and grass."

There is no dispute that both Mr. Burton and the co-op understood that the purpose of the crop spraying services was to rid Mr. Burton's soybean fields of weeds and grass. Accomplishing this purpose does not relate to the scope of the work but rather to the anticipated outcome of the work. Both parties in this case expected that the spraying would rid Mr. Burton's fields of weeds and grass; however, unfulfilled expectations do not a breach of contract make unless these expectations are based on a promise of the party providing the services. In common legal parlance, this promise is called an express warranty.

Mr. Burton cannot at this late stage assert a breach of warranty claim even though he included one in his complaint. During the trial, his lawyer unequivocally waived Mr. Burton's warranty claims and stated that the case was being tried only on the breach of contract and negligence claims. We do not permit parties to raise claims or defenses on appeal that were not first raised in the trial court. *Norton v. McCaskill*, 12 S.W.3d 789, 795 (Tenn. 2000); *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991); *Devorak v. Patterson*, 907 S.W.2d 815, 818 (Tenn. Ct. App. 1995). Accordingly, we decline to permit Mr. Burton to piggyback a breach of warranty claim on his contract claim.[2]

The trial court dismissed Mr. Burton's contract claim after finding that the co-op had "performed the services that they were hired to perform." Because the trial court was acting in response to a Tenn. R. Civ. P. 41.02(2) motion rather than a motion for directed verdict, we must review the trial court's finding using the standard in Tenn. R. App. P. 13(d). We have examined the evidence presented by Mr. Burton and have determined that it does not preponderate against the trial court's conclusion that the co-op performed the services it contracted to perform. Accordingly, we affirm the dismissal of Mr. Burton's contract claim.

## IV.
### MR. BURTON'S NEGLIGENCE CLAIM

We turn now to the dismissal of Mr. Burton's negligence claim. On this appeal, he insists that the trial court "abused its discretion by rejecting [the] application of the doctrine of res ipsa loquitur to prove the coop was negligent . . ." and that the trial court "abused its discretion by directing a verdict . . . where Burton established a prima facie case for . . . negligence. . . ." These arguments have three short-comings. First, the "abuse of discretion" standard is inapplicable to the trial court's decision. Second, the trial court dismissed Mr. Burton's negligence claim pursuant to

---

[2]Even if we were to permit Mr. Burton to assert a breach of warranty claim, his efforts would ultimately avail him nothing because he never proved (1) that the co-op expressly warranted or guaranteed that their spraying would rid his fields of weeds and grass or (2) that his low crop yield was caused by the weeds and grass in the point rows of his fields.

Tenn. R. Civ. P. 41.02(2), not Tenn. R. Civ. P. 50. Third, any consideration of the application of the res ipsa loquitur doctrine can only occur in the context of an underlying negligence claim.

## A.

A plaintiff pursuing a negligence claim must prove more than injury or damage. *Kilpatrick v. Bryant*, 868 S.W.2d 594, 599 (Tenn. 1993) (holding that "the mere occurrence of an injury does not prove negligence"); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d 423, 426 (Tenn. Ct. App. 1994). To recover, a plaintiff must also prove or demonstrate (1) that the defendant owed a duty to the plaintiff, (2) that the defendant's conduct breached this duty, (3) that the defendant's conduct was a cause-in-fact of the plaintiff's injury or damage, and (4) that no existing rule of law relieves the defendant from common-law liability for its negligence.[3] *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *Lett v. Collis Foods, Inc.*, 60 S.W.3d 95, 99 (Tenn. Ct. App. 2001).

Persons asserting a common-law negligence claim must prove all the elements of their case using either direct evidence, circumstantial evidence, or a combination of the two. *Morrow v. Town of Madisonville*, 737 S.W.2d 547, 548 (Tenn. Ct. App. 1987); *Troutt v. Branham*, 660 S.W.2d 502, 506 (Tenn. Ct. App. 1983). They customarily prove their case by producing direct evidence regarding the defendant's specific conduct. Cases that fit within the res ipsa loquitur doctrine are exceptions to this general rule.

Plaintiffs relying on res ipsa loquitur need not prove specific acts of negligence by the defendant to get their case to the jury. *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d 91, 96 (Tenn. Ct. App. 1983); *Parker v. Warren*, 503 S.W.2d 938, 942 (Tenn. Ct. App. 1973). They may instead base their case on the circumstances surrounding the injury if common experience indicates "(1) that the injury was probably the result of negligence, even though the exact nature of the negligence is unknown, and (2) that it was probably the defendant who was the negligent person."[4]

---

[3]The Tennessee Supreme Court now refers to this concept as "legal cause." It reflects legislative and judicial policy decisions to place certain types of otherwise actionable conduct beyond the boundary of common-law tort liability. *Kilpatrick v. Bryant*, 868 S.W.2d at 598; *Waste Mgmt., Inc. v. South Cent. Bell Tel. Co.*, 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). For example, the General Assembly, by enacting the workers' compensation laws, has determined for policy reasons that an employer's conduct cannot be the legal cause of an employee's on-the-job injury. *Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 (Tenn. 1997).

[4]Several cases have stated that the res ipsa loquitur doctrine cannot be invoked unless the nature and circumstances of the injury permit "no reasonable inference but that the injury complained of was due to the negligence of defendant . . .." *Coca-Cola Bottling Works v. Sullivan*, 178 Tenn. 405, 417, 158 S.W.2d 721, 726 (1942); *Fulton v. Pfizer Hosp. Prods. Group, Inc.*, 872 S.W.2d 908, 912 (Tenn. Ct. App. 1993), or unless "the circumstances leave no room for different inferences." *Susman v. Mid-South Fair, Inc.*, 180 Tenn. 471, 474, 176 S.W.2d 804, 805 (1944). Stating the requirement in this way is unduly restrictive because it effectively requires a plaintiff to prove a civil case beyond a reasonable doubt. W. Page Keeton, *Prosser and Keeton on the Law of Torts* § 39, at 248 (5th ed. 1984) ("Prosser and Keeton"). A plaintiff is not required to eliminate all other causes of his or her injury to invoke the res ipsa loquitur doctrine. *Roberts v. Ray*, 45 Tenn. App. 280, 284, 322 S.W.2d 435, 437 (1958). All that is required is evidence from which reasonable persons can say that, on the whole, it is more likely that negligence attributable to the defendant caused the plaintiff's injury. Dobbs § 155, at 373; 4 Fowler V. Harper et al., *The Law of Torts* § 19.7, at 45-46 (2d ed. 1986) ("Harper").

1 Dan B. Dobbs, *The Law of Torts* § 154, at 371 (2001) ("Dobbs"); *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d at 426 (holding that res ipsa loquitur "permits a fact-finder to infer that a defendant was negligent when the circumstances of the injury would cause a reasonable person to conclude that the injury would not have occurred had it not been for the defendant's negligence"); *Boykin v. Chase Bottling Works*, 32 Tenn. App. 508, 522, 222 S.W.2d 889, 895 (1949) (holding that res ipsa loquitur provides the means for determining whether the inferences to be drawn from the circumstances surrounding an injury "furnish a rational basis for a conclusion that it is more likely than not that (1) the injury was due to the negligence of someone, and (2) that the defendant was the responsible party").

The courts must take care to avoid applying the res ipsa loquitur doctrine in a way that undermines our system of tort liability based on fault.[5] Harper § 19.5, at 27-30. It is not enough for a plaintiff to prove that he or she was injured by some unidentified person's negligence. Even though there is beyond all reasonable doubt "negligence in the air," the plaintiff must still bring the negligence home to the defendant. Prosser and Keeton § 39, at 248. The plaintiff must present evidence that affords a rational basis for concluding that the negligent conduct that caused the injury is probably attributable to the defendant. Dobbs § 157, at 378; Harper § 19.7, at 45-46.

As it is presently applied in Tennessee, the doctrine of res ipsa loquitur cannot be invoked unless the circumstances surrounding the plaintiff's injury demonstrate (1) that the injury or damage was probably the result of negligence and (2) that it was probably the defendant who was the negligent person.[6] Thus, plaintiffs intending to rely on the doctrine must establish three things.

---

[5]The Tennessee Supreme Court adopted Tennessee's system of modified comparative fault to tighten the fit between liability and fault. *Carroll v. Whitney*, 29 S.W.3d 14, 16 (Tenn. 2000).

[6]In the past, the courts have conditioned the application of res ipsa loquitur on two other requirements. First, several decisions inferred that the doctrine could be applied only where direct evidence of the defendant's negligence was either unaccessible to or unknown by the plaintiff. *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d 86, 91 (Tenn. 1999); *Coca-Cola Bottling Works v. Sullivan*, 178 Tenn. at 416, 158 S.W.2d at 726. Limiting the application of res ipsa loquitur to circumstances where the defendant has superior knowledge of the cause of the plaintiff's injuries has never been a hard and fast rule and should not be an indispensable condition to invoking the doctrine. Harper § 19.9 at 62; Prosser and Keeton § 39, at 254-55. While it is a factor to consider, Dobbs § 160, at 386-87, courts rarely view it as a deciding factor. Restatement (Second) of Torts § 328 D, cmt. k (1965).

Other decisions have limited the application of the res ipsa loquitur doctrine to plaintiffs who demonstrate that they did not contribute in any way to their injury. *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. 199, 207, 396 S.W.2d 351, 355 (1965); *Boykin v. Chase Bottling Works*, 32 Tenn. App. at 524-25, 222 S.W.2d at 896-97. This "plaintiff participation" rule originally related to the identification of the negligent actor, not with the allocation of fault. Dobbs § 159, at 385. Only a minority of states have required the plaintiff to negate his or her own negligence as a prerequisite to invoking res ipsa loquitur. Harper § 19.8, at 58. In most jurisdictions, the requirement essentially disappeared with the adoption of comparative fault. 1 *Comparative Negligence Manual* § 1:28 (3d ed. 1995); Prosser and Keeton § 39, at 254; 3 Stuart M. Speiser, et al., *The American Law of Torts* § 13:32, at 783-84 (1986). In modified comparative fault jurisdictions, the res ipsa loquitur doctrine will not allow a recovery by any plaintiff who is more responsible for his or her injury than the defendant. 1 Arthur Best, *Comparative Negligence* § 4.60 (1999).

First, the plaintiff must identify how the injury occurred.[7]  Second, the plaintiff must demonstrate that the event causing the injury is of a kind which does not ordinarily occur in the absence of negligence.[8]  Third, in traditional terms, "[t]he plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control. . .."[9]

The "exclusive control" element of the res ipsa loquitur doctrine, if read too literally, is overly restrictive.  Res ipsa loquitur cannot be applied unless the circumstances surrounding the injury indicate that the causal negligence was probably the defendant's, not that of another person.  Dobbs § 157, at 378.  Evidence that the plaintiff was injured by an instrumentality that was in the defendant's exclusive control at the time is sufficient for this purpose.  However, proving a defendant's exclusive control of an instrumentality when an injury occurs is not the only way to demonstrate the defendant's responsibility for the injury.  Harper § 19.7, at 45-46.  Tennessee's courts, like their counterparts in other states, have approved the application of res ipsa loquitur in cases involving foreign objects in sealed containers and exploding soft drink bottles where the defendant could not be said to have been in "exclusive control" of the injury-causing instrumentality when the injury occurred.  *Coca Cola Bottling Works, Inc. v. Crow*, 200 Tenn. 161, 166, 291 S.W.2d 589, 591 (1956) (exploding bottle); *Coca-Cola Bottling Works v. Sullivan*, 178 Tenn. at 414, 158 S.W.2d at 725-26 (foreign object in a sealed container).  These cases indicate that Tennessee's courts do not view "exclusive control" as indispensable to the application of the res ipsa loquitur doctrine.  The Tennessee Supreme Court, quoting Restatement (Second) of Torts § 328 D, cmt. g with approval, points out:

> Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case.  The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.

*Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. at 208, 396 S.W.2d at 356.

---

[7] *De Glopper v. Nashville Ry. & Light Co.*, 123 Tenn. 633, 646, 134 S.W. 609, 612 (1911) (holding that res ipsa loquitur cannot be invoked when "the act which caused the injury . . . must be inferred from the accident itself.  You cannot well say that an act is negligent, unless you know what it is"); *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 865 (Tenn. Ct. App. 2001) (noting that the fatal flaw in the plaintiffs' case was their inability to identify the object or condition that caused their child's injury); *Armes v. Hulett*, 843 S.W.2d 427, 432 (Tenn. Ct. App. 1992) (holding that one of the elements necessary to the application of res ipsa loquitur is "a 'thing' causing an injury").

[8] *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d at 91; *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. at 205-06, 396 S.W.2d at 354-55; Restatement (Second) of Torts § 328 D(1)(a) (1965).

[9] *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d at 91; *Armes v. Hulett*, 843 S.W.2d at 432.  Other courts have further refined this element by requiring that the defendant be in exclusive control of the instrumentality when the negligent actions apparently causing the injury occurred.  *Stinnett v. Wright*, 59 Tenn. App. 118, 123-24, 438 S.W.2d 357, 360 (1968).

Res ipsa loquitur is a rule of evidence, not a rule of law. *Quinley v. Cocke*, 183 Tenn. 428, 438, 192 S.W.2d 992, 996 (1946). It is intended to come to the aid of plaintiffs who have no direct evidence of a defendant's negligence, *Provident Life & Accident Ins. Co. v. Professional Cleaning Serv., Inc.*, 217 Tenn. at 208, 396 S.W.2d at 356, by providing a specialized vehicle for considering circumstantial evidence in negligence cases. *Poor Sisters of St. Francis v. Long*, 190 Tenn. 434, 442-43, 230 S.W.2d 659, 663 (1950). It permits, but does not require, a fact-finder "to infer negligence from the circumstances of an injury." *Seavers v. Methodist Med. Ctr.*, 9 S.W.3d at 91; *Shivers v. Ramsey*, 937 S.W.3d 945, 949 (Tenn. Ct. App. 1996).

The res ipsa loquitur doctrine is primarily useful in jury trials. It provides a trial court with a framework for determining whether the plaintiff's evidence entitles him or her to get to the jury. *North Memphis Sav. Bank v. Union Bridge & Constr. Co.*, 138 Tenn. 161, 188, 196 S.W. 492, 498 (1917); *Ford v. Roddy Mfg. Co.*, 60 Tenn. App. 495, 505, 448 S.W.2d 433, 437 (1969); *John Bouchard & Sons, Co. v. Keaton*, 9 Tenn. App. 467, 480 (1928). The role of the trial court is to determine whether the plaintiff's evidence is sufficient to permit a reasonable person to infer from the circumstances that negligence attributable to the defendant caused the plaintiff's injury. Restatement (Second) of Torts § 328 D(2). If the answer is no, the trial court may direct a verdict for the defendant.[10] If the answer is yes, then the plaintiff can weather a motion for directed verdict,[11] and the case will be submitted to the jury for it to decide whether to choose the inference of the defendant's causal negligence or some other permissible or reasonable inference. *Shivers v. Ramsey*, 937 S.W.2d at 949; *Sullivan v. Crabtree*, 36 Tenn. App. 469, 475-77, 258 S.W.2d 782, 784-85 (1953); *Gibson County Elec. Membership Corp. v. Hall*, 32 Tenn. App. 394, 405, 222 S.W.2d 689, 694 (1947); Restatement (Second) of Torts § 328D(3) (1965); Harper § 19.11, at 69.

The res ipsa loquitur doctrine addresses only two of the five elements of a common-law negligence claim. It permits an inference that the defendant breached a duty it owed to the plaintiff. It also permits an inference that the defendant's conduct, whatever it was, caused the plaintiff's injury. Thus, to succeed with a negligence claim, a plaintiff relying on the doctrine must still prove: (1) that the defendant owed a duty to him or her and that the apparent cause of the injury lies within the scope of this duty;[12] (2) that the plaintiff suffered an injury; and (3) that the defendant's conduct, whatever it may have been, was the legal cause of the plaintiff's injury.

---

[10]Courts may decline to submit a res ipsa loquitur claim to the jury (1) if there is simply not enough experience to justify an inference that the defendant's negligence, more probably than not, caused the plaintiff's injury or (2) if, in the court's experience, it was not more probable that the plaintiff's injury was caused by negligence. Dobbs § 155, at 373.

[11]A plaintiff relying on the doctrine of res ipsa loquitur may not survive a motion for directed verdict at the close of all the proof if the defendant's evidence concerning the cause of the plaintiff's injury is so strong that reasonable persons could draw no conclusion other than that the injury was not caused by the defendant's negligence. *Poor Sisters of St. Francis v. Long*, 190 Tenn. at 442-43, 230 S.W.2d at 663; *Swiney v. Malone Freight Lines*, 545 S.W.2d 112, 116 (Tenn. Ct. App. 1976).

[12]Prosser and Keeton § 39, at 255. The doctrine is of no assistance when the defendant literally owes no duty to the plaintiff. Dobbs § 154, at 370 n.3; Restatement (Second) of Torts § 328 D, cmt. j.

**B.**

The trial court noted in its findings of fact that "the vagaries of crop farming are many." Accordingly, the co-op argues it is highly unlikely that a court would ever apply the res ipsa loquitur doctrine to crop spraying cases. This is an overstatement. While the application of the res ipsa loquitur doctrine is so fact-dependent that the courts may apply it in one set of circumstances but decline to apply it in a similar set of circumstances with only slight factual differences, *Olswanger v. Funk*, 63 Tenn. App. 201, 206-07, 470 S.W.2d 13, 15-16 (1970), there is no basis for assuming that the doctrine is particularly unsuited for crop spraying cases. In fact, this court has approved the application of the doctrine in a case involving the spraying of insecticides on trees, shrubs, and grass. *Greer v. Lawhon*, 600 S.W.2d 742, 745 (Tenn. Ct. App. 1980). Similarly, the courts of other states have not hesitated to approve the application of the doctrine in crop spraying cases.[13] Accordingly, we decline to analyze Mr. Burton's case based on the notion that his reliance on res ipsa loquitur was somehow inappropriate.

The trial court's decision in this case, at least to the extent that its findings of fact reflect its reasoning, was influenced by the "vagaries of crop farming." All of Mr. Burton's witnesses conceded that crops could be affected by a variety of natural and man-made factors. Therefore, to successfully invoke the doctrine of res ipsa loquitur, Mr. Burton was required to trace the crop damage to a cause or specific instrumentality that the co-op was responsible for or to show that the co-op was responsible for all reasonably probable causes of the crop damage. Prosser and Keeton § 39, at 248. The trial court apparently decided that Mr. Burton failed on both counts.

The evidence supporting a res ipsa loquitur case must be strong enough to avoid requiring the fact-finder to make a leap of faith to find for the plaintiff. *Underwood v. HCA Health Servs. of Tenn., Inc.*, 892 S.W.2d at 427. In this case, Mr. Burton offered no direct evidence regarding the specific cause or instrumentality that damaged his crops. Accordingly, he was required to present enough evidence to enable a reasonable person to infer, with at least reasonable probability, that the co-op was responsible for all the probable causes of the damage to his soybean crop. This Mr. Burton did not do. Rather, the trial court was left to speculate not only about what aspect of the selection, mixing, or application of the herbicides could have caused the damage to Mr. Burton's soybeans, but also whether it was herbicides, as opposed to the climate or other factors for which the co-op could not have been responsible, that could have caused the damage.

The inferences permitted by the res ipsa loquitur doctrine are rebuttable. Most commonly, defendants rebut these inferences by proving (1) that they exercised reasonable care under the circumstances, (2) that the plaintiff's injury was caused by something over which they had no control, (3) that the plaintiff's injury was the sort of injury that commonly occurs without anyone's negligence, or (4) that the plaintiff's injury could not have been avoided even with the exercise of reasonable care. *Summit Hill Assocs. v. Knoxville Utils. Bd.*, 667 S.W.2d at 96; *Swiney v. Malone Freight Lines*, 545 S.W.2d at 116. It is the fact-finder's prerogative to weigh the evidence to

---

[13]*Eaton Fruit Co. v. Cal. Spray-Chem. Corp.*, 445 P.2d 437, 440 (Ariz. 1968); *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1044-45 (Cal. 1954); *Bloxsom v. San Luis Valley Crop Care, Inc.*, 596 P.2d 1189, 1191 (Colo. 1979); *DeVane v. Smith*, 268 S.E.2d 711, 713 (Ga. Ct. App. 1980); *Hall v. Superior Chem. & Fertilizer, Inc.*, 819 S.W.2d 422, 424-25 (Mo. Ct. App. 1991); *Tide Prods., Inc. v. Browning*, 493 S.W.2d 654, 656 (Tex. Civ. App. 1973).

determine whether the defendant has successfully rebutted the inferences arising from the plaintiff's evidence. *Casenburg v. Lewis*, 163 Tenn. 163, 167, 40 S.W.2d 1038, 1039 (1931); *Kidd v. Dunn*, 499 S.W.2d 898, 899-900 (Tenn. Ct. App. 1973).

Normally, the defendant presents evidence rebutting the inferences raised by the plaintiff's evidence after the plaintiff rests. However, in this case, part of the co-op's rebuttal evidence came in during Mr. Burton's case-in-chief because Mr. Burton's lawyer decided to call Mr. Young, the co-op employee who sprayed Mr. Burton's fields, as a witness for Mr. Burton. Mr. Young's testimony, more than anything else, undermined the strength of Mr. Burton's res ipsa loquitur case because he testified, in effect, that he had used reasonable care under the circumstances in mixing and applying the herbicides to Mr. Burton's fields.

In a spraying case like this one, a negligence claim against the herbicide applicator must be based on the applicator's conduct. The sort of conduct that could give rise to liability includes: (1) choosing the wrong herbicides, (2) using the wrong concentration of herbicides, (3) contaminating the herbicides with the residue of harmful chemicals used on another application, (4) spraying at the wrong time, or (5) spraying in the wrong way. Mr. Young addressed each of these points during his testimony.

Mr. Burton stated at trial that he did not believe that the co-op had chosen the wrong herbicides to spray on his soybeans. Neither he nor his other witnesses testified that the chemicals used by the co-op were improper or that Mr. Young failed to use the herbicides selected by the co-op. To the contrary, Mr. Young testified that he used the herbicides selected by the co-op. Accordingly, the record provides no support for an inference based on the co-op's choice of the herbicides to spray on Mr. Burton's fields.

Mr. Young also testified that he mixed the herbicides on location and that he mixed them in accordance with the manufacturer's directions based on the size of the fields he was spraying. He discussed his spraying schedule and his adjustments to the schedule to make sure that each customer's crops were sprayed at the proper time. No witness discussed Mr. Young's spraying technique because Mr. Burton has not claimed that the damage to his soybeans was caused by the manner in which Mr. Young applied the herbicides. Accordingly, the record contains insufficient evidence to support an inference that Mr. Young used the wrong concentration of herbicides, sprayed the herbicides at the wrong time, or sprayed the herbicides in the wrong manner.

The final possibility for causal negligence involves the chance that the tank containing the herbicides sprayed on Mr. Burton's fields could have been contaminated with the residue of other previously used chemicals that could damage soybeans. Mr. Young agreed that residue from another application could cause crop damage but testified that there was no residue of other chemicals in the tank on his spray rig. First, he discounted the possibility that the tank could have contained Atrozene residue because it was too late in the year to be spraying this herbicide. Second, he testified that it was not possible that residue from another application could have been left in his tank because he always washed out the tank before starting to spray another chemical.

The trial court in this case was not simply acting as a gate-keeper to decide whether the inferences from Mr. Burton's evidence were strong enough to take his case to the jury. There was no jury in this case; it was a bench trial. Accordingly, the trial court was the ultimate fact-finder.

-11-

Thus, when the co-op filed its Tenn. R. Civ. P. 41.02(2) motion, the trial court had the same prerogative to weigh the evidence that it would have had at the conclusion of all the proof. The trial court could permissibly decide the co-op's motion based on its own view of the weight of the evidence. It was not required to determine whether the evidence would permit reasonable persons to reach only one conclusion. After weighing the evidence, the trial court concluded that Mr. Burton had not proved that his poor soybean crop was caused by negligence or that it was caused by any conduct attributable to the co-op. While the evidence could possibly have supported another conclusion, we cannot say that the evidence preponderates against the trial court's conclusion that Mr. Burton had failed to prove that the co-op's negligence damaged his soybean crop. Accordingly, we affirm the dismissal of Mr. Burton's negligence claim.

## V.

We affirm the dismissal of Mr. Burton's contract and negligence claims and remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. We tax the costs of this appeal to Joe Burton and his surety for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE