IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 17, 2003 Session

## MICHAEL WARDEN v. THOMAS L. WORTHAM, ET AL.

_____

## JERRY TIDWELL, ET AL. v. MICHAEL WARDEN, ET AL.

**Appeal from the Chancery Court for Hickman County**
**No. 0015268     Donald P. Harris, Chancellor**

_____

**No. M2002-00364-COA-R3-CV - Filed September 11, 2003**

_____

This case involves specific performance of a real estate contract. The first buyer and the seller entered into a contract for the sale of certain land. The contract did not state a time of performance. After the first buyer failed to perform within the time period understood by the seller, the seller sold the property to the second buyer. The first buyer did not discover the sale to the second buyer until approximately ten months after the second contract was signed and seven months after the transfer. The first buyer filed a lawsuit against both the seller and the second buyer, seeking specific performance of the original contract. The trial court found that the first buyer failed to tender performance within a reasonable time, and granted the second buyer's motion for directed verdict. The first buyer appeals. We affirm, in agreement with the reasoning of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Douglas Thompson Bates, III, Centerville, Tennessee, for appellant, Michael Warden.

Alan D. Johnson, Nashville, Tennessee, for appellees, Jerry M. Tidwell, and Ronald H. Tidwell and wife, Amy M. Tidwell.

Derrick C. Smith, Nashville, Tennessee, for appellees, Wallace Harvill and Harvill and Lovelace.

**OPINION**

On July 26, 1999, Plaintiff-Appellant Michael Warden ("Michael Warden") agreed to purchase real property from Thomas L. Wortham ("Wortham"). Michael Warden's father, Bobby Warden ("Bobby Warden") met Wortham on the property earlier in the day and agreed on a purchase

price. A hand-written contract ("Wortham/Michael Warden contract") was signed by both Wortham and Bobby Warden, who signed on behalf of Michael Warden. The contract states:

Prepared by Bobby Warden and Thomas Wortham

July 26, 1999

This Agreement between Thomas L. Wortham and Michael Warden is to secure a parcel of property consisting of 13.26 Acres located at 10950 Missionary Ridge Rd.[,] Deed Book 112[,] page 463. ALL liens presently on property are to be released by Seller before closing. Selling price is $22,000.00 (Twenty-two thousand dollars)[.]

Seller, Thomas L. Wortham, agrees that a lien be placed on said piece of property in the amount of $22,000.00 (Twenty-two thousand dollars) payable to Michael Warden to secure advanced payment to Thomas Wortham for said property.

/s/ Michael Warden by Bobby Warden          /s/ Thomas L. Wortham

Bobby Warden and Wortham then drove to the courthouse and recorded the contract. Later that day, Wortham received $500 towards the $22,000 purchase price from Michael Warden's cousin, Jason Warden ("Jason Warden").

Wortham received no further monies from Michael Warden or from anyone on Michael Warden's behalf. Nearly a month later, on August 19, 1999, Wortham returned the $500 to Jason Warden with a note to Bobby Warden informing him that Wortham was "terminat[ing] the proposed agreement between Michael Warden and Thomas L. Wortham dated July 26, 1999."

Several days later, on August 23, 1999, Wortham entered into a contract with Jerry W. Tidwell, and Ronald H. Tidwell and his wife, Amy M. Tidwell (collectively, "the Tidwells") to sell the same property for the same amount as agreed upon in the Wortham/Michael Warden contract, $22,000 ("Wortham/Tidwell contract").[1] Wortham deeded the property to the Tidwells on August 31, 1999, and the Tidwells paid Wortham for the property in October 1999. During this time, Wortham heard nothing from either Bobby or Michael Warden.

On July 5, 2000, Michael Warden filed a lawsuit against Wortham and the Tidwells. In the lawsuit, Michael Warden asked that the trial court declare the Wortham/Tidwell deed subordinate to the Wortham/Michael Warden contract and divest the Tidwells of the property. The Tidwells' answer asserted that the Wortham/Michael Warden contract was never valid and that Michael

---

[1]Although Amy M. Tidwell was not a party to the August 23, 1999 contract, she was named in the deed and the insurance policy on the property. In addition, Scarlett Wortham, Wortham's then wife, was a party to the contract. Neither of these facts affect the disposition of the case.

Warden was estopped from asserting ownership in the land because of improvements the Tidwells had made on the land as well as Michael Warden's delay in pursuing the cause of action. The Tidwells filed a counter-complaint against Michael Warden, as well as a third-party complaint against Bobby Warden,[2] and asked the trial court to direct the Wardens to release the lien created by the Wortham/Michael Warden contract and for compensatory damages for the loss of sales of certain tracts of land included in the subject property because of the cloud on the title.

Wortham, representing himself, filed an answer to Michael Warden's complaint. He asserted that under the Wortham/Michael Warden contract, Wortham was to receive the $22,000 payment within three days of execution of the contract. He claimed that he attempted to contact Bobby Warden to complete the transaction, but that his calls were not returned. Wortham contended that the contract was not valid, but even if it were, the Wardens breached the contract by failing "to take any timely steps toward closing the transaction."

The Tidwells filed a motion for summary judgment, asserting that the Wortham/Michael Warden contract was too ambiguous to support a grant of specific performance, and that it would be unjust to award relief to Michael Warden in light of his delay in filing suit against the Tidwells. In response, Michael Warden asserted that Bobby Warden and Jason Warden made several unsuccessful attempts to contact Wortham. The Tidwells' motion for summary judgment was denied.

A bench trial was held on December 17, 2001. Neither Michael Warden nor Wortham, the parties to the contract at issue, testified at trial. Bobby Warden, however, testified at trial. Bobby Warden said Wortham told him he needed money, and that was the reason that Wortham was immediately given $500 towards the purchase of the property. It was Bobby Warden's understanding that there were liens on the subject property, and that those liens were to be satisfied prior to closing the sale. Bobby Warden acknowledged that he had Wortham's cell phone number and pager number, and that he overheard Wortham giving information on how to contact him to an employee of attorney J. Wallace Harvill ("Harvill"), who was to draw up a deed on the property. Bobby Warden asserted that he made some attempts to contact Wortham after Wortham terminated the Wortham/Michael Warden contract by paging him and calling him on his cell phone. Bobby Warden also had Jason Warden assist him in the attempts to locate Wortham. Bobby Warden testified that he discovered in June 2000 that the Tidwells had purchased the property. He acknowledged that he had no difficulty finding Wortham in order to sue him.

Bobby Warden said that he understood that Wortham was waiting for insurance proceeds in order to pay off a mortgage on the property, and that Wortham had other debts. He denied that he understood that Wortham needed the $22,000 in advance to satisfy liens on the property.

_____

[2]The Tidwells additionally filed third-party complaints against various other defendants, including J. Wallace Harvill, an attorney who dealt with all the parties involved in these transactions. The trial court bifurcated the Tidwell/Harvill third-party complaint, which is not part of this appeal, but allowed Harvill's counsel to participate in the Warden/Wortham/Tidwell trial.

Although Wortham did not testify, portions of Wortham's deposition testimony were read into the record. Wortham testified that, at the time Bobby Warden and Wortham signed the contract for the sale of the land, Wortham understood he would receive the $22,000 two or three days after signing the agreement. Approximately two or three days after the contract was signed, Wortham contacted Bobby Warden. At that time, Wortham was told he would have to wait until after the closing to receive the remainder of the payment. Wortham acknowledged that the only lien on the land at the time of the Wortham/Michael Warden contract was the lien for the mortgage, which would be satisfied by the expected insurance proceeds.

Jason Warden also testified. He said that Wortham was given $500 to help him out until the liens could be cleared, so that "within two or three days, or within a week . . . we could go ahead and close, and he'd get his money." Wortham, Jason Warden said, was in a hurry to sell the land before judgment creditors placed additional liens on it. He was aware that Wortham was "broke" and in need of money.

Harvill, who dealt with all the parties involved, testified that sometime in the latter part of August 1999, Bobby Warden was aware that the Tidwells were attempting to buy the property.

At the close of Michael Warden's proof, counsel for the Tidwells moved for a directed verdict. Counsel asserted that the contract was too ambiguous to support a grant of specific performance and that, because of Michael Warden's delay, he "acquiesced in what transpired thereafter." The trial court, citing Michael Warden's failure to tender the purchase price, granted the motion for directed verdict. The trial court stated:

I think if Mr. Warden had gone into Mr. Harvill's office, or had paid the money into court, or had found Mr. Wortham and paid him the $22,000, or offered to pay the $22,000, that he would have an agreement that would be enforceable. But he didn't do that.

He might also be forgiven had he known that Mr. Wortham had already conveyed the property to another. But Mr. Warden's testimony is that he didn't know that until June of the year 2000.

So I think he had an obligation to make a tender to someone, from the facts known to him, to Mr. Bobby Warden. . . .

The facts known to [Michael Warden], Mr. Wortham had gone in and retained Mr. Harvill's office to complete this transaction. So even though he couldn't find Mr. Wortham, he had somewhere he knew he could go. And if he would have gone down there and made the tender, he would be entitled to the property.

-4-

That becomes more critical, even after he had knowledge that Mr. Wortham was attempting to rescind the contract by sending the money back. And he didn't even, within a reasonable time after that time, go in and tender the $22,000.

A written order was entered on January 10, 2002, denying Michael Warden's request for specific performance of the Wortham/Michael Warden contract, and directing Michael Warden to release his lien on the property held by the Tidwells. From this order, Michael Warden appeals.

On appeal, Michael Warden argues that the trial court erred in finding that tender of payment was required because the terms of the contract did not provide for payment prior to closing, and because tender was never raised as a defense prior to the trial court's decision. Michael Warden also asserts that the facts of this case do not support an equitable award in the Tidwells' favor because the Tidwells did not change their position as a result of Michael Warden's actions.

Although Wortham moved for a directed verdict under Rule 50.01 of the Tennessee Rules of Civil Procedure, the trial court's order will be treated as an involuntary dismissal under Rule 41.02(2) of the Tennessee Rules of Civil Procedure.[3] Thus, on appeal, our standard of review is that for an involuntary dismissal. *Plemmons v. Graves*, No. E2001-00733-COA-R3-CV, 2001 Tenn. App. LEXIS 822, at *10-11 (Tenn. Ct. App. Nov. 5, 2001).

A motion for involuntary dismissal challenges the sufficiency of the plaintiff's proof. *Burton v. Warren Farmers Coop*, No. M1999-00486-COA-R3-CV, 2002 Tenn. App. LEXIS 661, at *8 (Tenn. Ct. App. Sept. 12, 2002). "Thus, a court faced with a Tenn. R. Civ. P. 41.02(2) motion need only impartially weigh and evaluate the plaintiff's evidence just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." *Id.* at *9 (citing *Thompson v. Adcox*, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001)); *see also* Tenn. R. Civ. P. 41.02(2); *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977). Our standard of review of the trial court's decision regarding the involuntary dismissal is *de novo* with a presumption of correctness of the findings of facts by the trial court unless the evidence preponderates otherwise. *Plemmons*, 2001

---

[3] Tennessee Rule of Civil Procedure 41.02(2) provides:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court shall reserve ruling until all parties alleging fault against any other party have presented their respective proof-in-chief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence; in the event judgment is rendered at the close of plaintiff's evidence, the court shall make findings of fact if requested in writing within three days after the announcement of the court's decision.

Tenn. R. Civ. P. 41.02(2).

Tenn. App. LEXIS 822, at \*11; Tenn. R. App. P. 13(d). Regarding witness credibility, "[w]e give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility of the witnesses." ***Burton***, 2002 Tenn. App. LEXIS 661, at \*10 (citing Thompson v. Adcox, 63 S.W.3d 783, 787 (Tenn. Ct. App. 2001)). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. ***Campbell v. Fla. Steel Corp.***, 919 S.W.2d 26, 35 (Tenn. 1996).

Michael Warden first asserts that, under the terms of the contract, tender of payment was not triggered until some time following Wortham's repudiation of the contract. Contract interpretation is a matter of law and is reviewed on appeal de novo with no presumption of correctness. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). When a contract is unambiguous, it is not necessary to resort to rules of construction; rather, it is proper to rely on the language of the document itself to reveal the intent of the parties. ***Tenn. Valley Auth. v. Exxon Nuclear Co.***, 753 F.2d 493, 496 (6th Cir. 1985). If a contract is ambiguous, however, parol evidence may be considered to explain the actual agreement. ***Jones v. Brooks***, 696 S.W.2d 885, 886 (Tenn. 1985) (citing ***Anderson v. Sharp***, 259 S.W.2d 521 (Tenn. 1953); ***Mills v. Wm. Faris & Co.***, 59 Tenn. (12 Heisk.) 451 (1873)). "The language of a contract is ambiguous when its meaning is uncertain and when it can be fairly construed in more than one way." ***Gredig v. Tenn. Farmers Mut. Ins. Co.***, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994).

In the case at bar, the contract states:

> This Agreement between Thomas L. Wortham and Michael Warden is to secure a parcel of property consisting of 13.26 acres located at 10950 Missionary Ridge Rd.[,] Deed Book 112[,] page 463. ALL liens presently on property are to be released by Seller before closing. Selling price is $22,000.00 (Twenty-two thousand dollars)[.]

> Seller, Thomas L. Wortham, agrees that a lien be placed on said piece of property in the amount of $22,000.00 (Twenty-two thousand dollars) payable to Michael Warden to secure advance payment to Thomas Wortham for said property.

Thus, while the act expected to be performed by each party is not ambiguous, the time of performance is ambiguous indeed. Michael Warden asserts that the portion of the contract stating "ALL liens presently on property are to be released by the Seller before closing" means that Michael Warden was not required to tender payment until Wortham satisfied all liens on the property. The Tidwells assert, however, that Wortham agreed to place a lien on the property in favor of Michael Warden to secure "advance payment" to Wortham, that is, payment in advance of closing. The Tidwells contend that the contract contemplated a two-step process. First, Wortham would grant a lien in favor of Michael Warden, in exchange for which he would receive advance payment for the property. Second, the liens would be released and the sale would be closed. Under this interpretation, then, until Michael Warden provided the advance payment, $22,000, to Wortham, Wortham had no obligation to convey the land to Michael Warden.

Clearly the contract at issue does not state the time in which the transfer of the advance payment or the following closing would take place. Thus, factors outside the four corners of the contract may be considered to determine the intent of the parties. *Jones v. Brooks*, 696 S.W.2d at 886. Moreover, under Tennessee law, when a contract states no time of performance, performance must occur within a reasonable time. *Minor v. Minor*, 863 S.W.2d 51, 54 (Tenn. Ct. App. 1993) " 'What constitutes a reasonable time within which an act is to be performed where a contract is silent upon the subject depends on the subject matter of the contract, the situation of the parties, their intention in what they contemplated at the time the contract was made, and the circumstances attending the performance.' " *Id.* (quoting 17A Am. Jur. 2d *Contracts* § 480 (1991)); *see also* 7 Tenn. Jur. *Contracts* § 68 (1997).

Here, the Wardens were aware that Wortham was "broke" and had no income. Jason Warden testified that he expected the liens to be cleared and the sale to close within one week. Wortham testified in his deposition that he expected to receive the advance payment from Michael Warden within two to three days after signing the contract. When Wortham contacted Bobby Warden a few days later to find out when he would receive the remaining funds, he was told that he would have to clear any liens on the property prior to being paid. The Wardens became aware within a few weeks that their contract had been terminated. However, they did not discover until June 2000, that the land had been sold to the Tidwells. Under all of these circumstances, we cannot find that the trial court erred in finding that Michael Warden was required to tender the purchase price of $22,000 within a reasonable time period of six months, but failed to do so.

Michael Warden next asserts that the trial court erred in basing its decision on failure to tender payment when that issue was never raised as an affirmative defense. Rule 15.02 of the Tennessee Rules of Civil Procedure allows for issues to be tried by the implied consent of the parties:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.

Tenn. R. Civ. P. 15.02. Thus, when an issue is tried by implied consent, it is treated as if it had been raised in the pleadings.

In the trial in this cause, there was considerable testimony about efforts by Bobby and Jason Warden to contact Wortham, as well as Wortham's efforts to contact them and Michael Warden, in order to complete the transaction. Wortham's deposition testimony discussing the time of performance, that is, tender of payment, was read into the record. Moreover, counsel for Michael Warden made no objection to the trial court's decision on this basis after it was announced.

Considering all of the circumstances, we find that the issue of tender was tried with the implied consent of the parties.

Michael Warden next asserts that equitable defenses are not supported by the facts in the case at bar. He argues that it makes no difference that Michael Warden waited "nearly a year" to bring suit against the Tidwells, because there is no proof in the record that the Tidwells changed their position based on the Wardens' actions. Based on our review of the record, this argument is without merit.

The decision of the trial court is affirmed. Costs are taxed to the appellant, Michael Warden, and his surety, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE
