IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2017 Session

## GLOBAL MALL PARTNERSHIP v. SHELMAR RETAIL PARTNERS, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 14-0384-II      Carol L. McCoy, Chancellor**

_____

### No. M2016-01383-COA-R3-CV

_____

The landlord of a shopping mall commenced this action against a commercial tenant for breach of a lease. The tenant claimed it had an enforceable oral agreement to terminate the lease with the former landlord. The landlord contended that the original lease contained a "no oral modification" clause; thus, the oral agreement to terminate the lease was unenforceable. After the landlord presented its proof at trial, the court dismissed the case pursuant to Tenn. R. Civ. P. 41.02(2), ruling that the oral termination agreement between the tenant and the former landlord was enforceable despite the "no oral modification" clause in the lease. This appeal followed. When a defendant files a Tenn. R. Civ. P. 41.02(2) motion for involuntary dismissal at the conclusion of the plaintiff's proof at trial, the only evidence the trial court may consider in determining whether the proof was sufficient to demonstrate a right to the relief is "the plaintiff's proof" at trial. Tenn. R. Civ. P. 41.02(2). We have determined that the trial court erroneously considered facts and documents not found in the plaintiff's proof. Excluding the extraneous facts and documents, the evidence presented at trial preponderates against the trial court's factual findings and its conclusion that the landlord's predecessor in interest and the tenant entered into a binding lease termination agreement. Accordingly, we reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

James W. White, Nashville, Tennessee, for the appellant, Global Mall Partnership d/b/a Global Mall at the Crossings.

Randall J. Fishman and Richard S. Townley, Memphis, Tennessee, for the appellee, Shelmar Retail Partners, LLC d/b/a City Gear, LLC.

## OPINION

The plaintiff, Global Mall Partnership ("Global Mall"), owns and operates Global Mall at the Crossings ("the Mall"), which was formerly known as Hickory Hollow Mall. CBL & Associates Management, Inc. ("CBL") managed Hickory Hollow Mall, LP ("Hickory Hollow") and acted as its agent at all times material to this action. Global Mall purchased the Mall from Hickory Hollow. The closing occurred on October 30, 2012, at which time Hickory Hollow assigned six commercial leases to Global Mall. The defendant, Shelmar Retail Partners, LLC d/b/a City Gear, LLC ("City Gear"), was a tenant at the time of the closing, and its lease was assigned to Global Mall.

City Gear entered into a five-year lease agreement with Hickory Hollow in March 2005 for the purpose of operating a retail clothing store at the Mall. In August 2010, City Gear and Hickory Hollow executed an agreement extending the lease through June of 2015. In addition to paying a minimum annual rent, City Gear agreed to pay 5% of any gross sales exceeding $1.3 million per year. If less than two anchor tenants remained, and the non-anchor tenants occupied less than 65% of the square footage in the Mall, the rent would be reduced to 5% of City Gear's gross sales. The lease prohibited City Gear from operating another store within a three-mile radius of the Mall during the lease term. It also stated that the lease could not be modified "in any manner other than by agreement in writing signed by all the parties hereto or their successors in interest."

By May 2012, all of the anchor tenants had departed from the Mall, and CBL presented City Gear with a proposed lease termination agreement. The effective date of termination was left blank on the proposal. Moreover, the proposal included a disclaimer in bold type, "**This transmittal is not an offer to enter into the Agreement, and until the Agreement has been approved and fully executed by [Hickory Hollow], the Agreement is not an enforceable contract**." For reasons not explained in the proof presented at trial, City Gear did not sign the May termination agreement.[1]

Although City Gear did not have a duly executed written termination agreement with Hickory Hollow, City Gear entered into a lease agreement in June of 2012 with another of CBL's clients, The Courtyard at Hickory Hollow Limited Partnership. City Gear intended to relocate to The Courtyard at Hickory Hollow ("the Courtyard") as soon as construction at the Courtyard was completed. Even though the Courtyard lease, like

---

[1] As revealed in more detail later in this opinion, facts and documents were submitted in support of and in opposition to motions for summary judgment prior to trial that shed light on this circumstance; however, this information is not to be found in the proof presented by the plaintiff at trial.

the Hickory Hollow lease, prohibited City Gear from operating another store within a three-mile radius, the Courtyard lease was not contingent upon City Gear obtaining a contemporaneous termination of its lease with Hickory Hollow.

On September 13, 2012, CBL provided City Gear with an unsigned, second draft of a proposed termination agreement. This proposal also stated in bold type, "**This transmittal is not an offer to enter into the Agreement, and until the Agreement has been approved and fully executed by [Hickory Hollow], the Agreement is not an enforceable contract**." As was the case with the May proposal, City Gear did not sign or respond to the September proposal even though CBL sent two follow-up emails urging City Gear to sign and return the proposed termination agreement.

The very next day, on September 14, Hickory Hollow entered into a contract to sell the Mall to the plaintiff, Global Mall. Prior to the closing, CBL sent an email to Global Mall's attorney on September 28 informing Global Mall that City Gear would be relocating to the Courtyard. The parties closed on the purchase of the Mall on October 30. As part of the closing, Hickory Hollow assigned six commercial leases to Global Mall, including its lease with City Gear. As of the date of closing, City Gear still had not executed a written lease termination agreement, and Global Mall had not seen any draft of a proposed termination agreement with City Gear. The day after the closing, Hickory Hollow notified City Gear that its lease had been assigned to Global Mall and that all future rent payments should be made to Global Mall.

Six weeks later, on December 20, 2012, City Gear signed and delivered to CBL the proposed lease termination agreement. On the same day, CBL delivered the agreement to Global Mall's attorney, Mark Nobles, with instructions for Global Mall to sign the agreement. Acting on behalf of Global Mall, Mr. Nobles promptly notified CBL and City Gear that Global Mall would not sign the agreement and that it would enforce City Gear's lease. Shortly thereafter, City Gear moved out of the Mall and relocated its retail store to the Courtyard. It also stopped paying any rent to the Mall.

Global Mall commenced this action by filing a complaint against City Gear for breach of contract. City Gear responded by filing an answer and a third-party claim against Hickory Hollow, CBL, and the Courtyard for indemnification should the court rule that City Gear breached its lease with Global Mall. It based its defense to the complaint and its claims against the third-party defendants on the theory of promissory estoppel. City Gear alleged that Hickory Hollow and CBL promised City Gear that they would terminate its lease contemporaneous with its relocation to the Courtyard. City Gear further alleged that it reasonably relied on that promise to its detriment by signing the new lease with the Courtyard and by building the new space at that location. City Gear also contended that its lease with the Courtyard contained an implied contractual term that the Hickory Hollow lease would terminate when the Courtyard lease became effective.

The third-party defendants filed answers denying any liability. Following discovery, they filed a joint motion for summary judgment arguing, *inter alia*, that the oral agreement between Hickory Hollow and City Gear was unenforceable. The trial court agreed and summarily dismissed City Gear's claims against them.

In its memorandum and order granting summary judgment, the court found that City Gear's lease with Hickory Hollow contained a "no oral modification" clause and did not terminate until June 30, 2015. It found that CBL attempted to obtain City Gear's signature on a lease termination agreement in May 2012 and then, again, in September 2012 to no avail. It also found that each of the proposed lease termination agreements provided that neither proposal served as an offer to terminate the lease unless Hickory Hollow signed it, and Hickory Hollow failed to sign either agreement.

Further, despite having no duly executed written termination agreement with Hickory Hollow, City Gear signed a lease with the Courtyard in June 2012, expecting to relocate in late 2012 or early 2013. The court also found that the Courtyard lease was not contingent upon the execution of a lease termination agreement with Hickory Hollow. Moreover, the court noted that Hickory Hollow sold the Mall and assigned City Gear's lease to Global Mall on October 30, 2012. Finally, Global Mall never signed the lease termination agreement with City Gear; nevertheless, City Gear vacated the Mall premises and stopped paying rent.

Considering the "no oral modification" clause in the Hickory Hollow lease and the disclaimers in the written proposals, the trial court held that it could not enforce an oral agreement to terminate the lease, and that the Hickory Hollow lease "remained valid and binding after it was assigned" to Global Mall. Based on these undisputed facts, the trial court summarily dismissed City Gear's claim against Hickory Hollow, CBL and the Courtyard. Thereafter, the only remaining parties to this action were Global Mall and City Gear.

The case was tried without a jury on January 25, 2016. The only witness to testify at trial was Dr. Rajesh Aggarwal. He stated that he and his wife own Global Mall Partnership d/b/a Global Mall at the Crossings, and he was the manager of Global Mall. The most relevant evidence elicited from Dr. Aggarwal during direct examination is summarized as follows:

Global Mall entered into a contract to purchase the Mall from Hickory Hollow on September 14, 2012. The purchase of the Mall closed on October 30, at which time Hickory Hollow assigned six commercial leases to Global Mall, including Hickory Hollow's lease with City Gear. The term of City Gear's lease went through June 30, 2015. At no time prior to the closing did Hickory Hollow or CBL inform Dr. Aggarwal of the agreement to terminate City Gear's lease, nor did they ask him to agree to an early

termination of City Gear's lease. Moreover, at no time prior to the closing did Dr. Aggarwal see a proposed lease termination agreement with City Gear.

On December 20, 2012, almost two months after Hickory Hollow assigned City Gear's lease to Global Mall, CBL forwarded a proposed termination agreement to Global Mall signed by City Gear on the same date, with a request that Global Mall sign and return it to CBL. On behalf of Global Mall, Mr. Nobles promptly informed CBL it would not sign the agreement. Shortly after Dr. Aggarwal received the December 20 letter, City Gear moved out of the Mall and relocated to the Courtyard and ceased paying rent under the Hickory Hollow lease. Dr. Aggarwal testified that neither he nor his attorney communicated with City Gear prior to receiving the December 20 letter. In response, counsel for Global Mall sent a letter informing City Gear that its lease at the Mall was in full force and effect, and Global Mall expected City Gear to fulfill its obligations under the lease.

On cross examination Dr. Aggarwal acknowledged that he saw the September 2012 email CBL sent to Mr. Nobles, which was thirty-two days before the closing, in which CBL indicated that City Gear would be leaving the Mall. Other relevant evidence elicited from Dr. Aggarwal during cross examination is summarized as follows:

Dr. Aggarwal stated that he did not reply to the email because neither he nor Mr. Nobles was asked to take any action, and the email did not say that City Gear would be terminating the lease early. Moreover, the email did not indicate that City Gear intended to leave the Mall on a certain date, only that City Gear would be leaving: "[The notice] did not say when and it was not an agreement." While acknowledging that the assignment agreement required Global Mall to assume the legal obligations of Hickory Hollow, Dr. Aggarwal insisted that no obligation existed concerning an early termination of City Gear's lease at the time the City Gear lease was assigned to Global Mall. As he explained, Global Mall had an obligation to do whatever Hickory Hollow had agreed to do, but as of October 30, 2012, the date the lease was assigned to Global Mall, there was no agreement to terminate City Gear's lease, and "no such document existed."

The following colloquy was elicited by counsel for City Gear, Randall Fishman, during Global Mall's case-in-chief:

Q. Dr. Aggarwal, I want to talk to you about the assignment, agreement assignment and assumption, a document that was entered as Exhibit 2, assignment 10/30/12. Do you see that portion that I've highlighted?
A. Yes, sir.
Q. All right. "Assignee hereby assumes and agrees to perform, fulfill, and comply with all covenants and obligations to be performed, fulfilled, or complied with by the landlord under the lease with respect to deposits on and after the effective date." You see that?

A. Yes, sir.

Q. And you see the language in "obligations to be performed"?

A. Yes, sir.

Q. So you agree with me that you had an obligation to do whatever [Hickory Hollow] had agreed to do, correct?

A. Yes, sir.

Q. All right. And if [Hickory Hollow] had an understanding and an agreement to terminate City Gear, then you, likewise, had the same obligation; isn't that right?

A: On October 30th, 2012, no such document existed.

. . . .

Q. I've asked if you agree with me that if [Hickory Hollow] had an obligation under an agreement to terminate, you, likewise, had the same obligation?

A. If the obligation was in writing and they had provided me that obligation, yes.

Q. Your lawyer got an email a month ahead of time that said they were leaving?

A. It did not say when and it was not an agreement.[2]

Following cross examination of Dr. Aggarwal, Global Mall's counsel asked a few additional questions on redirect and then rested his case by telling the court Dr. Aggarwal was his only witness. Immediately thereafter, City Gear's counsel, Mr. Fishman, moved for a "directed verdict" on behalf of City Gear.[3]

---

[2] During cross examination, Mr. Fishman mistakenly referred to Hickory Hollow, the former landlord, as CBL on several occasions. Mr. Nobles corrected this by stating that CBL was not the landlord. More specifically, Mr. Nobles explained that "City Gear had leases with the Hickory Hollow Mall Limited Partnership. . . . It's not CBL. CBL is merely an agent."

[3] Counsel for City Gear erroneously identified it as a "motion for directed verdict." It was his intent to make a motion for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2). The parties concede that the trial court correctly treated it as a motion for involuntary dismissal. The distinct differences in the two motions was succinctly stated in *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) as follows:

A Tenn. R. Civ. P. 41.02(2) motion for involuntary dismissal differs markedly from a Tenn. R. Civ. P. 50 motion for a directed verdict. The most obvious, yet most overlooked, difference is that motions for directed verdicts have no place in bench trials, while Tenn. R. Civ. P. 41.02(2) motions have no place in jury trials. *Cunningham v. Shelton Sec. Serv., Inc.*, 46 S.W.3d 131, 135 n. 1 (Tenn. 2001); *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977); *Scott v. Pulley*, 705 S.W.2d 666, 672 (Tenn. Ct. App. 1985). Beyond this obvious procedural difference, motions for involuntary dismissal serve a different purpose than motions for directed verdict and require the courts to employ a substantially different method of analysis.

In support of his motion, Mr. Fishman explained, *inter alia*, that Dr. Aggarwal was aware that City Gear was "intending to move," that the assignment of the leases required Global Mall to fulfill all of Hickory Hollow's obligations, that City Gear entered into a lease with the Courtyard, and that City Gear had partially performed on the Courtyard lease. Therefore, Global Mall was "required to release [City Gear] from the old lease." Mr. Fishman further argued that Global Mall could receive no more than Hickory Hollow could receive because Global Mall stepped in Hickory Hollow's shoes: "[Global Mall] has no greater right and must fulfill each and every obligation that [Hickory Hollow] had to fulfill." In closing, he stated that his client was principally relying on *Gurley v. King*, 183 S.W.3d 30 (Tenn. Ct. App. 2005).

Counsel for Global Mall responded to the motion for involuntary dismissal by stating, in pertinent part:

> We have proof that Hickory Hollow Mall Limited Partnership sold the property to Global Mall. We have proof that the lease was assigned [to Global Mall], and we have Dr. Aggarwal's testimony, uncontroverted, that [City Gear] did move out, that they left the mall and failed to pay rent. There's nothing that excuses their action for doing so at this time. There's no evidence that gives them any excuse for abandoning their property. I do not think a directed verdict is appropriate. I have nothing else, Your Honor.

Following a lunch break, the trial judge returned and ruled from the bench. In pertinent part the court stated that it had read the *Gurley* opinion during the recess and found it persuasive. The court then stated:

> Much has been made of the absence of an executed lease termination agreement. As it appears, Hickory Hollow Mall had a tenant, City Gear, which was in Antioch. The plaintiff, Global Mall, purchased the interest of Hickory Hollow Mall Limited Partnership and contends that in so doing it acquired the existing lease that City Gear had with Hickory Hollow Mall and that lease did not terminate until June of 2015, that the sale occurred on October 30th, 2012.
>
> In December of 2012, City Gear moved from the premises at Hickory Hollow Mall Limited Partnership to the premises of The Courtyard at Hickory Hollow, not a great distance but a new location, and did not pay any rents to the new owner, Dr. Aggarwal, who in turn has filed a lawsuit seeking recovery of damages for unpaid rents from 2012 to the June 2015 date in which the lease was to have expired. In the absence of an executed lease termination agreement, the plaintiff contends that he is entitled to recover.

The trial court then discussed the *Gurley* decision and its analysis of two types of preliminary agreements and found one of them, the second type, applicable. As the trial court explained:

The second and different sort of preliminary and final agreement is one that expresses mutual commitment to a contract on agreed major terms while recognizing the existence of open terms that remain to be negotiated. Although existing, an open term would generally suggest that the binding agreement has not been reached. That is not necessarily so. For the parties can bind themselves to a concededly incomplete agreement in the sense that they accept a mutual commitment to negotiate together in good faith an effort to reach a final agreement within the scope that has been settled in the preliminary agreement. To differentiate the sort of preliminary agreement from the first, it must be referred to as a binding preliminary commitment. Its binding obligations are of a different order than those which arrive of the first type discussed above. The first type binds both sides to their ultimate, contractual objective in recognition that the contract has been reached despite the anticipation of further formalities.

The second type, the binding preliminary commitment does not commit the parties to their ultimate, contractual objective but rather to the obligations to negotiate the issues in good faith and as an attempt to reach the alternate objective within the agreed frame. In this case, part of the overall agreement to relocate City Gear to The Courtyard involved the parties to the Hickory Hollow lease agreeing in principal to all the terms of the lease termination agreement, except for the termination date itself as early as the first draft of the agreement on May 17th, 2012. At that time the preliminary agreement between City Gear and Hickory Hollow Mall Limited Partnership and through its agent, CBL, contained at least one open and essential term, the termination date. By June of 2012, however, City Gear had executed the new lease for retail space at The Courtyard. And the agent for Hickory Hollow Mall, CBL, began the construction process to prepare the new retail space for City Gear. Under the rationale articulated in Gurley, the part performance by both parties in reliance on their agreement to terminate the Hickory Hollow lease obligated them from that point forward to negotiate in good faith on the remaining unsettled terms, namely the termination date. Even if the original parties never agreed on the termination date, the landlords' assignee, Global Mall, would have had an obligation to negotiate a termination date in good faith because of the party's performance and reliance by City Gear.

- 8 -

Prior to closing, City Gear and its original landlord agreed on a termination date to coincide with City Gear's occupation of the new retail space at The Courtyard; and the assignee, Global Mall, was bound by that agreed termination date. The Hickory Hollow lease and The Courtyard lease contained mutually exclusive retail restrictions, meaning simultaneous operation of City Gear's stores in both locations would automatically result in a breach of both leases. This circumstance demonstrates that on or before September 13th, 2012, the date of the email in Exhibit -- excuse me, that's not the date in Exhibit 4 -- I mean before September 13, 2012, the parties entered into a fully enforceable and binding lease termination agreement with the understanding that they would subsequently execute the written memorialization in accordance with the terms of the original lease. Global Mall on purchasing the Hickory Hollow property took over rights and obligations of the landlord in the assignment of leases, which included the obligation to execute the lease termination agreement as mutually assented to by City Gear and Hickory Hollow Mall Limited Partnerships and CBL. Global Mall's failure and refusal to do so when it had knowledge of City Gear's planned relocation to The Courtyard prior to closing constitutes a breach of the applied covenant of good faith and fair dealings, which is implied in every contract in the state of Tennessee. In the context of the applied covenant of good faith and fair dealings, good faith is best understood in the absence of bad faith. The implied duty of good faith and fair dealings was breached when one party uses discretion conferred by the contract to act outside of accepted commercial practices to deprive another party the benefit of the contract. City Gear -- excuse me, Global Mall was on notice that City Gear was relocating out of Hickory Hollow and into The Courtyard by virtue of an email to plaintiff's attorney dated September 28th, 2012. Despite this knowledge, plaintiff did not seek an estoppel certificate from City Gear prior to closing, did not seek further clarification from Hickory Hollow Mall as to the status of the City Gear lease being assigned with the sale. Instead, Global Mall waited until after closing had taken place. Global Mall refused to execute the lease termination agreement when it was tendered by CBL in December of 2012. Had the sale to Global Mall never taken place and had Hickory Hollow Mall refused to sign the lease termination agreement so that it would place City Gear into mutually exclusive leases, such refusal would indisputably constitute bad faith on the part of Hickory Hollow Mall Limited. Hickory Hollow Mall Limited's obligation to execute the lease termination agreement flowed to Global Mall as the assignee of the original lease. Global Mall was placed on notice of City Gear's relocation prior to closing by virtue of the email to its attorney, and it had an obligation to act in good faith and in a commercially reasonably manner. Dr. Aggarwal acknowledged that when his attorney received that email in September of 2012, there was notice of the intent to

relocate, but what was missing was the date when it would transpire. As I have just referenced, Hickory Hollow Mall Limited Partnership could not refuse to execute the lease termination agreement in good faith with its understanding that when the premises were ready at The Courtyard, City Gear would be moving to The Courtyard. That duty also fell on the new purchaser who was assigned that lease, Global Mall. And on that basis the Court enters a directed verdict in favor of City Gear.

Thereafter, Global Mall filed a motion to alter or amend the judgment, arguing that the court's factual findings and legal conclusions in its order granting summary judgment did not comport with the factual findings and legal conclusions in its order granting the involuntary dismissal. Specifically, Global Mall noted that in the summary judgment order, the court found that the oral lease termination agreement between City Gear and Hickory Hollow was not enforceable. To the contrary, in the order granting involuntary dismissal, the court found that the oral agreement was enforceable. The court denied Global Mall's motion to alter or amend, stating that its factual findings and legal conclusions in both orders were consistent with one another.

After considering the above, the trial court issued its final order dismissing the case. In that order, the trial court expressly incorporated the findings of fact and conclusions of law contained in its order granting summary judgment. It also expressly incorporated the findings of fact and conclusions of law contained in the initial order granting the motion for involuntary dismissal. Global Mall appealed.

## ANALYSIS

Global Mall presents six issues on appeal. We have determined that the dispositive issue is whether Global Mall introduced sufficient evidence at trial to render the granting of a Tenn. R. Civ. P. 41.02 motion for involuntary dismissal improper.[4] As an integral

---

[4] Global Mall presented the following issues in its brief:

1. Whether the trial court made conflicting findings of fact and conclusions of law in granting third-party defendants' motion for summary judgment on the ground that under the undisputed facts the lease was not terminated by the defendant and granting defendant's motion for involuntary dismissal on the ground that the lease was terminated by the defendant, resulting in contradictory rulings adjudicating the rights of the parties.

2. Whether any evidence was presented after the trial court's order on summary judgment that would serve as the basis for the court's reversing its findings of fact and conclusions of law on summary judgment.

3. Whether the trial court erroneously concluded that there was no contradiction between its ruling on summary judgment and its ruling on defendant's motion for involuntary dismissal.

4. Whether the trial court's order on summary judgment precluded the granting of defendant's motion for involuntary dismissal.

(continued…)

part of this analysis, we also find it necessary to consider whether the trial court erroneously considered extraneous facts and documents City Gear relied on in opposition to the third-party defendants' motion for summary judgment that were not introduced at trial.

Motions for involuntary dismissal pursuant to Tenn. R. Civ. P. 41.02(2) challenge the sufficiency of the plaintiff's proof. *Burton v. Warren Farmers Co-op*., 129 S.W.3d 513, 520 (Tenn. Ct. App. 2002) (citations omitted). "A claim may be dismissed pursuant to a Tenn. R. Civ. P. 41.02(2) motion to dismiss if, based on the law and the evidence, the plaintiff has failed to demonstrate a right to the relief it is seeking." *Id*. (citing *City of Columbia*, 557 S.W.2d at 740). When faced with a Tenn. R. Civ. P. 41.02(2) motion, the court weighs the evidence "just as it would after all the parties had concluded their cases and may dismiss the plaintiff's claims if the plaintiff has failed to make out a prima facie case by a preponderance of the evidence." *Id*. (citing *Thompson v. Adcox*, 63 S.W.3d 783, 791 (Tenn. Ct. App. 2001)).

When a trial court grants an involuntary dismissal under Tenn. R. Civ. P. 41.02, we use the familiar Tenn. R. App. P. 13(d) standard of review "because the trial court has used the same reasoning to dispose of the motion that it would have used to make a final decision at the close of all the evidence." *Id*. (citations omitted). Thus, we must review the record de novo, presuming that the trial court's factual findings are correct unless the evidence preponderates otherwise. *See Shore v. Maple Lane Farms, LLC*, 411 S.W.3d 405, 414 (Tenn. 2013) (citing *Bldg. Materials Corp. v. Britt*, 211 S.W.3d 706, 711 (Tenn. 2007)). In contrast, we review the trial court's legal conclusions de novo without a presumption of correctness. *Bldg. Materials Corp.*, 211 S.W.3d at 711.

Because the case was involuntarily dismissed pursuant to Tenn. R. Civ. P. 41.02(2) at the conclusion of Global Mall's case-in-chief, the only evidence the trial court could consider to determine whether the proof was sufficient to demonstrate a right to the relief the defendant was seeking was "the plaintiff's proof" at trial. Tenn. R. Civ. P. 41.02(2); *Burton*, 129 S.W.3d at 520; *City of Columbia*, 557 S.W.2d at 740. And as noted above, the trial court was required to weigh the evidence just as it would after all of the parties had concluded their cases. *Burton,* 129 S.W.3d at 520 (citing *Thompson*, 63 S.W.3d at 791). Therefore, we shall review the proof pursuant to Tenn. R. Civ. P. 41.02, presuming that the trial court's factual findings are correct unless the evidence preponderates otherwise.

---

5.  Whether plaintiff presented sufficient evidence at trial, and whether sufficient evidence was in the record, to render the granting of an involuntary dismissal improper under the evidence in the record.

6.  Whether defendant presented any additional or new evidence after the court's ruling on summary judgment that would justify different findings of fact and conclusions of law on defendant's motion for involuntary dismissal.

Dr. Aggarwal was the only witness to testify, and without repeating the testimony summarized earlier, we find it important to note what is in the plaintiff's proof and what is not. Global Mall presented proof that the purchase of the Mall closed on October 30, 2012, at which time Hickory Hollow assigned City Gear's lease to Global Mall. The term of City Gear's lease went through June 30, 2015. At no time prior to the closing did Hickory Hollow or its agent ask Dr. Aggarwal to agree to an early termination of City Gear's lease, nor did Dr. Aggarwal see a proposed lease termination agreement. Moreover, City Gear did not sign a termination agreement until almost two months after Hickory Hollow had assigned City Gear's lease to Global Mall. Immediately following receipt of the proposed termination agreement, Global Mall rejected the agreement and refused to sign it.

While acknowledging that his agreement with Hickory Hollow required Global Mall to assume the legal obligations of Hickory Hollow, Dr. Aggarwal insisted that there was no obligation concerning an early termination of City Gear's lease when Hickory Hollow assigned City Gear's lease to Global Mall. As he explained, at the time of the assignment, there was no agreement to terminate City Gear's lease, and "no such document existed."

As noted earlier, when a defendant files a motion for involuntary dismissal at the conclusion of the plaintiff's proof, the only evidence the trial court may consider to determine whether the proof was sufficient to demonstrate a right to the relief it is seeking is "the plaintiff's proof" at trial. Tenn. R. Civ. P. 41.02(2); *Burton*, 129 S.W.3d at 520; *City of Columbia*, 557 S.W.2d at 740. The trial court's ruling is problematic because some of the material facts the court relied on in granting the motion did not appear anywhere in the plaintiff's proof.

In its order granting the involuntary dismissal, the trial court relied on three documents presented to the trial court in support of and in opposition to the third-party defendants' motion for summary judgment to find that City Gear and Hickory Hollow had "entered into a fully enforceable and binding lease termination agreement with the understanding that they would subsequently execute the written memorialization in accordance with the terms of the original lease." The three documents that formed the basis of this finding were the May proposal to terminate the lease, the September proposal to terminate the lease, and the Courtyard lease; however, none of these documents were presented in "the plaintiff's proof" at trial.[5] Moreover, a number of facts

---

[5] We acknowledge that these documents and other evidence were presented to the trial court in support of the third party defendants' motion for summary judgment, thus, the documents and facts are in "the record." Nevertheless, they were not introduced in the plaintiff's proof at trial and only the plaintiff's proof at trial may be considered when a Tenn. R. Civ. P. 41.02 motion for involuntary dismissal is under consideration.

the court referred to and relied on in making its ruling at trial only appear in the record as part of the motion for summary judgment. Nevertheless, the trial court relied on these documents and facts to find that Hickory Hollow and City Gear attempted to memorialize their oral agreement in May 2012 and, again, in September 2012 in accordance with the "no oral modification" clause in the Hickory Hollow lease.

The trial court also relied on these documents and extraneous facts to make three important findings. First, it found that City Gear signed a lease with the Courtyard in reliance on the oral agreement. Second, it found that prior to the October 30 closing, "City Gear and its original landlord agreed on a termination date to coincide with City Gear's occupation of the new retail space at The Courtyard." Third, it determined that Global Mall's predecessor in interest, Hickory Hollow, had an implied duty of good faith and fair dealing to sign the September proposal because City Gear partly performed in reliance on the oral agreement by signing a lease with the Courtyard.

Because the plaintiff did not present this evidence at trial, it may not be considered in the context of a Tenn. R. Civ. P. 41.02 motion. Therefore, we must review the evidence presented in the plaintiff's proof at trial, to determine whether there is a sufficient evidentiary foundation to support the trial court's findings of fact and conclusions of law. Having done so, we have determined that, without these documents and extraneous facts, no evidentiary foundation exists upon which to conclude that City Gear and Hickory Hollow had entered into a fully enforceable and binding lease termination agreement in September 2012 "with the understanding that they would subsequently execute the written memorialization in accordance with the terms of the original lease." We have also determined that, without these documents and extraneous facts, no evidentiary foundation exists upon which to conclude that prior to the October 30, 2012 closing, City Gear and Hickory Hollow "agreed on a termination date to coincide with City Gear's occupation of the new retail space at The Courtyard; and the assignee, Global Mall, was bound by that agreed termination date." Moreover, without this extraneous evidence, no factual or legal basis exists upon which to conclude that Global Mall had the "obligation to execute the lease termination agreement."

For the foregoing reasons, we have determined that the evidence preponderates against the trial court's findings of fact and the legal conclusions based thereon. Accordingly, we reverse the trial court's decision to dismiss and remand with instructions to reinstate the complaint.

**IN CONCLUSION**

The judgment of the trial court is reversed and this matter is remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Shelmar Retail Partners, LLC d/b/a City Gear, LLC.

_____
FRANK G. CLEMENT JR., P.J., M.S.