IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 15, 2024 Session

## HAREN CONSTRUCTION COMPANY, INC. v. OLEN FORD

**Appeal from the Chancery Court for Knox County**
**No. 203538-2          Richard B. Armstrong, Jr., Chancellor**

_____

### No. E2023-00503-COA-R3-CV

_____

The Chancery Court for Knox County (the "Trial Court") granted the motion for partial summary judgment filed by Haren Construction Company, Inc. ("Plaintiff"), concluding that Olen Ford d/b/a Olen Ford Masonry and Construction ("Defendant") had breached his contract with Plaintiff. The Trial Court awarded a judgment to Plaintiff against Defendant in the amount of $64,971.40. Defendant has appealed. Discerning no reversible error, we affirm the Trial Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and KRISTI M. DAVIS, JJ., joined.

John P. Valliant, Jr., and John P. Valliant, III, Knoxville, Tennessee, for the appellant, Olen Ford.

Robert P. Noell and David J. Cantrell, Knoxville, Tennessee, for the appellee, Haren Construction Company, Inc.

## OPINION

## Background

On November 5, 2021, Plaintiff filed a complaint in the Trial Court, alleging claims of breach of contract and promissory estoppel against Defendant. Plaintiff explained that it had served as the prime contractor for Knoxville Utility Board's ("KUB") Fourth Creek WWTP Sodium Hypochlorite Conversion Project ("the project"). In preparing its bid to construct the project for KUB, Plaintiff solicited bids for various components of the project. On March 18, 2021, Defendant submitted a bid to Plaintiff for the masonry component of the project.

Plaintiff alleged that it had relied on Defendant's bid in submitting its bid for the prime contract to KUB and identified Defendant as the masonry subcontractor in its bid. Plaintiff submitted its bid on March 19, 2021, and was awarded the prime contract on April 20, 2021. On May 18, 2021, Plaintiff tendered to Defendant a purchase order, titled "Subcontract/Material Order/Service Agreement," for the amount of $185,028.60. Plaintiff alleged that Defendant had begun his performance of the masonry work by providing Plaintiff with multiple rounds of submittals and delivering sample materials for approval. Plaintiff further claimed that Defendant then ceased work and abandoned the project prior to installing the masonry.

Plaintiff alleged that it had sent Defendant a letter and email in October 2021, placing Defendant on notice that if he did not perform the masonry work as promised, Plaintiff would be forced to procure another subcontractor. Defendant continued to refuse to complete the work. As a result, Plaintiff entered into a subcontract with another masonry subcontractor, who agreed to complete the work for $250,000. Plaintiff sought damages in the amount of $64,971.40, the difference between the $250,000 owed to the new subcontractor and the amount for which Defendant had agreed to complete the project. Plaintiff additionally sought interest, delay damages, attorney's fees, and other damages in an amount to be proven at trial. Plaintiff attached to its complaint the purchase order sent to Defendant in May 2021. Defendant never signed the purchase order.

On April 21, 2022, Defendant filed an answer to the complaint, denying the substance of Plaintiff's allegations. Defendant specifically claimed that Plaintiff had no right to rely on his bid without a signed contract and that there had been no "meeting of the minds as to the terms of the contract."

Plaintiff filed a motion for partial summary judgment, a memorandum of law in support, and a statement of undisputed material facts on December 7, 2022. Plaintiff argued that there were no genuine issues as to any material facts concerning the formation of the parties' contract or Defendant's breach of their contract. Alternatively,

Plaintiff claimed that there was no dispute that Defendant had made an unambiguous promise to perform the masonry work and that Plaintiff had justifiably relied on that promise to its detriment.

In its statement of undisputed material facts, Plaintiff set forth the following, in pertinent part:

3.      On February 11, 2021, [Plaintiff] sent Defendant an "Invitation to Bid," which included the KUB Plans and Specifications for the Project, proving Defendant an opportunity to bid on work as one of [Plaintiff's] subcontractors on the Project. *See id.* at ¶ 6.

4.      The Invitation to Bid included the KUB Plans and Specifications for the Project, which potential bidders would use to familiarize themselves with the Project, the terms and conditions of acting as a subcontractor on the Project, and to formulate their respective bids on the Project. *See id.* at ¶ 7.

5.      The KUB Plans and Specifications for the Project provided, among other things, that the masonry scope of work included submittals (KUB Plans and Specifications, Section 01300) and the furnishing and installation of the masonry work at the Project (KUB Plans and Specifications, Sections 03200, 04100, 04150, and 04200). *See id.* at ¶ 8.

6.      On March 18, 2021, in response to the Invitation to Bid, Defendant submitted its written bid to [Plaintiff] to perform the masonry work on the Project for $174,154. *See* Exhibit 1 attached to the Motion.

7.      On March 19, 2021, prior to submitting its bid to KUB, [Plaintiff] notified Defendant that it was the low bidder for the masonry scope of work on the Project by a large margin, and [Plaintiff] wanted to confirm Defendant's bid was accurate and complete. *See* Anders Aff. ¶ 10. [1]

8.      Defendant told a representative from [Plaintiff] that its bid was accurate and complete, and that it was not uncommon for Defendant's bid to be significantly lower than its competitors. *See* Anders Aff. ¶ 11.

9.      Under Tennessee law, because the Project was a public project, prior to submitting its bid to KUB, [Plaintiff] must select the masonry

---

[1] The "Anders Affidavit" refers to an affidavit by Marcus Anders, a project manager employed by Plaintiff and the "Assistant Project Manager" on the project. The affidavit was attached as an exhibit to Plaintiff's motion for partial summary judgment.

subcontractor that will perform the masonry scope of work at the Project, and write the name, license number, expiration date of the license, and license classification of that masonry contractor on the exterior of the bid sheet that [Plaintiff] submits to KUB. *See* Tenn. Code Ann. § 62-6-119(b)(2).

10.     On March 19, 2021, in reliance on Defendant's written bid, [Plaintiff] wrote Defendant, "Olen Ford Masonry," as its mason on the bid coversheet [Plaintiff] submitted to KUB to serve as the prime contractor on the Project. *See* Anders Aff. ¶ 13; *see also* Exhibit 2 attached to the Motion.

11.     On March 23, 2021, [Plaintiff] notified Defendant via email that [Plaintiff] was the low bidder on the Project and that [Plaintiff] accepted Defendant's bid to perform the masonry work on the Project for $174,154, creating a binding and enforceable contract (the "Contract"). *See* Anders Aff. ¶ 14; *see also* Exhibit 3 attached to the Motion.

12.     Defendant acknowledged [Plaintiff]'s acceptance of its offer, by responding to [Plaintiff]'s email, "Great, thanks for the update." *See id.*

13.     Shortly thereafter, the parties made two amendments to the Contract. *See* Anders Aff. ¶ 15.

14.     First, Defendant inadvertently included sales tax in its bid price and failed to include its bond rate of 2.5%, so the parties agreed to subtract the sales tax Defendant inadvertently included [in] its bid ($174,154 - $2,651.23 = $171,502.77), and add 2.5% to the price for Defendant's bond ($171,502.77 + $4,287.57 = $171,502.77), establishing a new, amended Contract price of $175,790.34. *See id.*; *see also* Exhibits 4 & 5 attached to the Motion.

15.     Second, Defendant inadvertently omitted 2" rigid foam insulation when calculating its bid, which Defendant said it could add for an additional $9,450 (the "Quote"). The parties agreed to subtract the sales tax ($9,450 - $437.06 = $9,012.94) from the Quote and add the 2.5% for the bond ($9,012.94 + $225.92 = $9,238.26), and add that to the amended Contract price, bringing the new amended Contract price to $185,028.60 ($175,790.34 + $9,238.26 = $185,028.60) to account for the 2" rigid foam insulation. *See id.*; *see also* Exhibits 6 & 7 attached to the Motion.

16.     To memorialize Defendant's bid and the applicable Contract documents, on May 18, 2021, [Plaintiff] sent Defendant Purchase Order

- 4 -

No. 23104 (the "PO"). *See* Anders Aff. ¶ 16; *see also* <u>Exhibit 8</u> attached to the Motion.

17.     Despite the fact that Defendant failed to sign and return the PO, Defendant began performing in accordance with the terms of the Contract almost immediately. *See id* ¶ 17; *see also* <u>Exhibits 9, 11-13</u> attached to the Motion.

18.     KUB's Plans and Specifications called for Defendant to submit multiple submittals to [Plaintiff] for approval by KUB's engineers prior to installing the masonry work at the Project. *See* <u>Exhibit 10</u> attached to the Motion.

19.     On June 7, 2021, as required by the Contract, Defendant submitted its initial submittals to [Plaintiff]. *See* Anders Aff. ¶ 19; *see also* <u>Exhibit 11</u> attached to the Motion.

20.     On June 15, 2021, Defendant provided [Plaintiff] with its proposed Schedule of Values form, which included a document executed by "Olen Ford." *See* Anders Aff. ¶ 20; *see also* Motion, <u>Exhibit 12</u>.

21.     In accordance with the terms of the Contract, Defendant delivered sample materials to [Plaintiff] so [Plaintiff] could forward those materials to KUB and KUB's Engineer for their selection of the materials Defendant would use at the Project. *See* Anders Aff. ¶ 21.

22.     [Plaintiff] submitted Defendant's samples to KUB and notified Defendant of the masonry materials KUB selected that Defendant would use on the Project. *See* Anders Aff. ¶ 22.

23.     September 15, 2021, Defendant delivered the final masonry submittals to [Plaintiff]. *See* Anders Aff. ¶ 23; *see also* <u>Exhibit 13</u> attached to the Motion.

24.     On October 4, 2021, KUB's engineer approved Defendant's submittals and [Plaintiff] returned them to Defendant that same day. *See* Anders Aff. ¶ 24.

25.     Defendant's installation of the masonry work at the Project was scheduled to commence on October 18, 2021. *See id.* ¶ 23.

26.     Defendant was scheduled to install the masonry scope of work at the Project on October 18, 2021. *See id.* ¶ 24.

- 5 -

27.     Once Defendant's submittals were approved by KUB's engineer and returned to Defendant, Defendant had fully performed the preliminary work required by the Contract, and its remaining obligations were to install the masonry work at the Project. *See id.* ¶ 25.

28.     On October 11, 2021, [Plaintiff] contacted Defendant to confirm this date to begin installing the masonry work, and for the first time, Defendant advised [Plaintiff] that it would not perform the masonry work at the Project. *See id.* ¶ 27.

29.     In order to keep the Project on schedule and comply with Tennessee law and its obligation to KUB to use Defendant as its mason on the Project, [Plaintiff] offered to settle this dispute with Defendant by offering Defendant additional compensation if it would honor its remaining obligations under the Contract. *See id.* ¶ 28; *see also* Exhibit 15 attached to the Motion.

30.     In an attempt to resolve [Plaintiff]'s dispute with Defendant, on October 14, 2021, [Plaintiff] sent a written settlement letter to Defendant and specified that acceptance was limited to executing and returning the settlement letter. *See id.* ¶ 29.

31.     Defendant did not respond to [Plaintiff]'s settlement letter, and instead abandoned the Project. *See id.* ¶ 30.

32.     Despite Defendant abandoning the Project, [Plaintiff]'s legal obligations to KUB remained — to ensure the masonry work was installed at the Project. *See id.* ¶ 31.

33.     On October 19, 2021, [Plaintiff] issued a purchase order to WASCO, in the amount of $250,000, to complete Defendant's scope of work on the Project. *See id.* ¶ 32; *see also* Exhibit 14 attached to the Motion.

34.     WASCO completed Defendant'[s] scope of work on the Project. *See* Anders Aff., ¶ 33.

On January 19, 2023, Defendant filed an affidavit, stating that he had been in the construction and masonry business for several decades and that it was industry custom for a subcontractor to have a full agreement and contract signed by both parties embodying all terms and conditions of the job before beginning work on the job. He further stated that it was industry custom for a subcontractor to provide "insurance, a W9 form, and a copy of business license" before starting any job. He stated that there was

never a signed contract between the parties and that he had never provided a certificate of insurance, a W9 form, or a business license to Plaintiff.

Several days later, Defendant filed a response to Plaintiff's motion for partial summary judgment, with responses to each of Plaintiff's undisputed material facts. Defendant disputed many of Plaintiff's proposed undisputed material facts but other than saying the fact "is disputed" did not provide citations to the record for these claimed disputed facts. Defendant argued that Plaintiff was not entitled to summary judgment because genuine issues of material facts existed as to whether a contract was ever formed between the parties. Specifically, Defendant argued that there had been no meeting of the minds as to all material terms, that it is standard practice for contractors to have a final written contract prior to "installation or execution of a contract," and that Defendant's alleged partial performance was "nothing but mere preparation."

After a hearing in January 2023, the Trial Court granted Plaintiff's motion for partial summary judgment in a judgment entered on March 9, 2023. The Trial Court noted that, although Defendant disputed many of Plaintiff's undisputed material facts, Defendant failed to support any of his disputed facts with specific citations to the record, thereby failing to comply with Tennessee Rule of Civil Procedure 56.03. The Trial Court found that Defendant properly contested only that Plaintiff was entitled to judgment as a matter of law. The Trial Court acknowledged that Defendant had filed his affidavit but found that Defendant had failed to state in a concise manner any additional facts in Defendant's response, again, failing to comply with Rule 56.03.

The Trial Court determined that the parties' email communications demonstrated Plaintiff's acceptance of Defendant's bid and Defendant's acknowledgment. The Trial Court additionally found: "Although the Defendant did not sign or return Plaintiff's Purchase Order, the record and the Plaintiff's reliance on the Defendant's behavior contains sufficient evidence – (e-mail communications, oral communications, and course of conduct) – to find that the parties manifested an assent to enter into a legal and binding contract thus requiring the Defendant to perform the masonry scope of the bid of work at the Project." The Trial Court further concluded that Defendant had breached the contract by failing to complete the masonry scope of work. The Trial Court accordingly awarded Plaintiff a judgment against Defendant in the amount of $64,971.40. The Trial Court certified its judgment as a final judgment, pursuant to Tennessee Rule of Civil Procedure 54.02. Defendant timely appealed.

**Discussion**

Although not stated exactly as such, Defendant raises one issue: whether the Trial Court erred by granting Plaintiff's motion for partial summary judgment.[2] Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> ***

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the

---

[2] On appeal, Plaintiff claims that Defendant has waived two of his arguments—one being related to his compliance with Rule 56.03 and the other relating to issues with the parties' proposed orders—by failing to raise these arguments to the Trial Court. We decline to find that Defendant has waived his argument related to his compliance with Rule 56.03. Given that he is appealing the Trial Court's ruling that he did not comply with Rule 56.03, it would not have been possible for Defendant to have raised this issue before the Trial Court issued its ruling. Nevertheless, we do find that Defendant has waived his arguments concerning the parties' proposed orders and his argument related to discovery given that he has failed to fully develop these arguments in his appellate brief in accordance with Tennessee Rule of Appellate Procedure 27. *See* Tenn. R. App. P. 27(a)(7) (requiring the appellant to include in his brief an argument setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on"). Defendant provides no detail related to his argument that discovery is incomplete, and his argument related to the parties' proposed orders amounts to little more than an assertion that the Trial Court should have considered and incorporated his own proposed order into its final judgment. Defendant fails to explain why his contentions require appellate relief, providing little to no explanation for these arguments.

nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*[*, Ltd. v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

Defendant first argues that the Trial Court erred in its findings of fact, specifically contending that the record contained insufficient evidence to establish that the parties objectively manifested assent to form an agreement. As support for this argument, Defendant relies heavily on his affidavit, in which he stated that it was industry custom to

have a "full agreement and contract signed by both parties embodying all terms and conditions of the job" and for the subcontractor to "provide insurance, a W9 form, and a copy of business license" before work on a job began. Defendant notes that the Trial Court did not consider "discoverable information", such as the affidavit, provided by him but instead relied heavily on Plaintiff's affidavit. Upon our review, we discern no error in the Trial Court's disregard of Defendant's affidavit.

The Trial Court did not consider Defendant's affidavit because Defendant did not cite to the affidavit in his response to Plaintiff's motion for partial summary judgment in accordance with Tennessee Rule of Civil Procedure 56.03. Rule 56.03 provides in pertinent part:

> Any party opposing the motion for summary judgment must, not later than five days before the hearing, serve and file a response to each fact set forth by the movant either (i) agreeing that the fact is undisputed, (ii) agreeing that the fact is undisputed for purposes of ruling on the motion for summary judgment only, or (iii) demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record. Such response shall be filed with the papers in opposition to the motion for summary judgment.

> In addition, the non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph with specific citations to the record supporting the contention that such fact is in dispute.

(Emphasis added.)

This Court has previously explained that "a nonmoving party's failure to comply with Rule 56.03 may result in the trial court's refusal to consider the factual contentions of the nonmoving party even though those facts could be ascertained from the record." *See Owens v. Bristol Motor Speedway, Inc.*, 77 S.W.3d 771, 774 (Tenn. Ct. App. 2001). Although a trial court, "acting within its discretion, may waive the requirements of the rule in an appropriate situation," this Court has previously concluded that a trial court's refusal to waive the "strict requirements" of Rule 56.03 is not error. *See id.* at 774-75. This Court has further explained that trial courts are "not required to sift through all the evidence of affidavits and depositions presented in the summary judgment motion and response to determine whether a dispute of material fact existed" and that Rule 56.03 was "enacted to remove this burden from the Trial Court and to require the parties to assist the Trial Court by directing its attention to the crucial parts of the record where a dispute of

- 10 -

fact exists." *Brennan v. Goble*, No. E2020-00671-COA-R3-CV, 2021 WL 2156443, at *7 (Tenn. Ct. App. May 27, 2021).

In this case, Defendant did not provide citations to the record for any fact he disputed. Although he filed an affidavit, he did not cite to the affidavit as support for his disputed facts, and therefore the Trial Court was not required to consider it. We accordingly find no error in the Trial Court's decision to disregard Defendant's affidavit given that Defendant failed to cite to the affidavit in either his response to Plaintiff's statement of undisputed material facts or in his own "concise statement of any additional facts." Tenn. R. Civ. P. 56.03.

Because Defendant failed to properly dispute any of Plaintiff's statements of material fact in accordance with Rule 56.03, the Trial Court acted properly by considering Plaintiff's statement of material facts as undisputed. The only question that remains is whether Plaintiff was entitled to judgment as a matter of law based upon these undisputed material facts.

The Trial Court found that the parties' email communications demonstrated Plaintiff's acceptance of Defendant's bid and Defendant's notice of acceptance. The Trial Court further found:

> Although the Defendant did not sign or return Plaintiff's Purchase Order, the record and the Plaintiff's reliance on the Defendant's behavior contains sufficient evidence – (e-mail communications, oral communications, and course of conduct) – to find that the parties manifested an assent to enter into a legal and binding contract thus requiring the Defendant to perform the masonry scope of the bid of work at the Project.

(Paragraph numbering omitted.) The Trial Court concluded that the parties' outward manifestations demonstrated mutual assent between the parties. Based upon our review of Plaintiff's statement of undisputed material facts and the evidence cited to support those facts, we find no error with the Trial Court's conclusion that a valid contract existed between the parties.

On appeal, Defendant argues that he never signed the purchase order and claims that the contract needed to be reduced to a signed writing to be valid pursuant to the Statute of Frauds. Tennessee's Statute of Frauds provides:

(a) No action shall be brought:

(1) To charge any executor or administrator upon any special promise to answer any debt or damages out of such person's own estate;

(2) To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;

(3) To charge any person upon any agreement made upon consideration of marriage;

(4) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one (1) year; or

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract;

unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

Tenn. Code Ann. § 29-2-101(a). None of the above-quoted circumstances apply to the facts in this case. Subsection (5) is the only circumstance that could feasibly apply to this case, but Defendant never alleged that the masonry work on the project would not be performed within the space of one year. We, therefore, find Defendant's reliance on the Statute of Frauds to be unavailing and conclude that the parties manifested their assent by their actions, notwithstanding the unsigned purchase order.

This Court has previously concluded that contracts may be formed by objective manifestations of assent, which need not always be expressed by a signature to a contract, explaining that:

A contract "must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced." *Staubach Retail Servs.-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) (quoting *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001) (citations omitted)). Courts determine mutuality of assent by assessing the parties'

manifestations according to an objective standard. *Id.* In other words, we must determine whether a reasonable onlooker, based upon the parties' outward manifestations, would conclude that the [parties] agreed to be bound by the terms of the written contract.

We first note that the signatures of parties to a written agreement are not always essential to establish a binding contract. *Id.*; *T.R. Mills Contractors, Inc. v. WRH Enters., L.L.C.*, 93 S.W.3d 861, 866 (Tenn. Ct. App. 2002). One function of the signature is to show the signor's intent to be bound by the terms stated, but other manifestations of assent can serve the same purpose in the absence of signature. *See Burton v. Warren Farmers Coop.*, 129 S.W.3d 513, 521 (Tenn. Ct. App. 2002). The parties' actions or inactions, as well as spoken words, can establish mutual assent. *Id.* (citing *Cole-McIntyre-Norfleet Co. v. Holloway*, 141 Tenn. 679, 214 S.W. 817, 818 (Tenn. 1919)). "[T]he existence of a contract, the meeting of the minds, the intention to assume an obligation, and the understanding are to be determined . . . not alone from the words used, but also the situation, acts, and the conduct of the parties, and the attendant circumstances." *Scandlyn v. McDill Columbus Corp.*, 895 S.W.2d 342, 345 (Tenn. Ct. App. 1994) (quoting *APCO Amusement Co. v. Wilkins Family Rests. of America*, 673 S.W.2d 523, 527 (Tenn. Ct. App. 1984) (citations omitted)).

*Moody Realty Co., Inc. v. Huestis*, 237 S.W.3d 666, 674-75 (Tenn. Ct. App. 2007) (emphasis added). This Court has further explained:

Acting in a manner that indicates acceptance of a contract is generally deemed to be acceptance—at least in the absence of a requirement that the acceptance take a different form. Unless the other party has reason to know of it, contract law does not typically credit a claim that, in spite of a party's objective manifestations of assent, it subjectively did not intend to be bound.

*See Rode Oil Co., Inc. v. Lamar Advert. Co.*, No. W2007-02017-COA-R3-CV, 2008 WL 4367300, at *9 (Tenn. Ct. App. Sept. 18, 2008).

In the present case, Defendant's subcontract bid constituted an offer to complete the masonry scope of the project. *Mann Elec. Co., Inc. v. Jameson*, No. 42, 1989 WL 107694, at *2 (Tenn. Ct. App. Sept. 19, 1989) ("By submitting a subcontract bid to appellee, appellant made an offer to enter into a contractual relationship. An offer does not result in a binding contract unless and until the offeree communicates an acceptance to the offeror."). Although the Trial Court found that Plaintiff had not expressly accepted the bid, Plaintiff's actions and communications clearly manifested an acceptance of Defendant's bid. Plaintiff used Defendant's bid in its general bid to KUB and followed

- 13 -

up with an email to Defendant expressing that it had used Defendant's bid, had been awarded the project, and would be issuing subcontracts soon. The parties then agreed to modifications to the contract price.

Plaintiff emailed Defendant with a new total contract price after removing the sales tax that Defendant had inadvertently included in his bid and adding a bond rate of 2.5%. Defendant confirmed the new total contract price of $175,790.34, stating "We agree with your total." Plaintiff next asked Defendant whether he had included the cost of 2" rigid foam insulation in his bid. Defendant responded that he had not but that he could include that for the additional cost of $9,450. Plaintiff agreed to add the additional cost to its purchase order. In his appellate brief, Defendant acknowledges that he agreed to these changes in the contract price. In addition, Plaintiff emailed Defendant requesting personnel information in order to request badge access from KUB for Defendant's employees. Defendant responded by stating "[w]e will need badges for" Olen Ford and Randy Blevins and providing the requested information.[3] Plaintiff then sent Defendant a purchase order, which, according to Plaintiff's statement of undisputed material facts, memorialized the agreement. The totality of these circumstances and actions by the parties certainly demonstrate, as found by the Trial Court, Plaintiff's acceptance of Defendant's bid, as well as Defendant's acquiescence to subsequent modifications.

Although Defendant never signed the purchase order, Defendant partially performed the contract and by every indication acted in such a manner that would lead a reasonable onlooker to conclude that Defendant had assented to the purchase order and accepted his obligation to complete the masonry work. Plaintiff sent the purchase order to Defendant on May 18, 2021. Defendant then began to perform work in accordance with the purchase order by providing Plaintiff with initial submittals on June 7, 2021; providing Plaintiff with sample materials for KUB's selection; and providing Plaintiff with final masonry submittals on September 15, 2021.

The purchase order provided that Defendant would furnish, among other things, submittals. Defendant fulfilled that portion of the purchase order. Defendant only notified Plaintiff a week prior to the scheduled installation that he did not intend to complete the work. Based upon Defendant's partial performance, and his failure to indicate any objection to the purchase order or any intention not to complete the work, we conclude, as did the Trial Court, that Defendant manifested by his actions that he assented to the purchase order. *See Interstate Mech. Contractors, Inc. v. W.B. Rentenbach Enters, Inc.*, No. 03A01-9301-CH-00046, 1993 WL 328072, at *1 (Tenn. Ct. App. Aug. 18, 1993) (determining that a "valid, oral contract" existed between subcontractor and general contractor because the parties agreed upon the terms and

---

[3] Some emails sent to Plaintiff were from a person named Pat Ford. Defendant has not alleged that emails not sent by him personally were unapproved.

conditions of the subcontract and the subcontractor "almost immediately set upon a course of job performance").

As this Court has stated in a similar case: "After three months on the job, i[t] would seem to be somewhat absurd for either party to be allowed to deny that a contract existed." *Blaine-Hays Constr. Co. v. Efficient Elec. Co.*, No. 03A01-9101CH00040, 1991 WL 260665, at *3 (Tenn. Ct. App. Dec. 12, 1991) (concluding that even if the general contractor's acceptance had deviated from the subcontractor's offer, the subcontractor "obviously acquiesced when it began to man the job and begin the electrical work."). It would likewise be absurd for us to allow either of the parties in the present case to deny that a contract existed given the foregoing reasons. Plaintiff's statement of undisputed material facts established that the parties in this case had formed a valid contract and that Defendant breached that contract by refusing to complete the masonry work on the project. The Trial Court did not err in granting Plaintiff's motion for partial summary judgment based upon Defendant's breach of contract.

## Conclusion

Upon our review, we affirm the Trial Court's judgment. We remand this cause to the Trial Court for further proceedings and collection of costs below. The costs on appeal are assessed against the appellant, Olen Ford, and his surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE